Benjamin MILLAN, pro se, Petitioner, Plaintiff, and Cross–Defendant

v.

CHASE BANK USA, N.A., Respondent, Defendant, and Cross–Plaintiff.

No. 2:07–cv–02819–FMC–FFMx.

United States District Court, C.D. California.

Jan. 23, 2008.

As Amended March 5, 2008.

Benjamin Millan, Los Angeles, CA, Pro se.

George G. Weickhardt, Pamela J. Zanger, Ropers Majeski Kohn & Bentley, San Francisco, CA, for Respondent, Defendant, and Cross–Plaintiff.

## ORDER GRANTING DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD AND DISMISS COMPLAINT

FLORENCE–MARIE COOPER, District Judge.

This matter is before the Court on Defendant's Motion to Confirm Arbitration Award and to Dismiss Complaint (docket no. 11), filed October 15, 2007. The Court has read and considered the moving, opposition, and reply documents submitted in connection with this motion. The Court deems this matter appropriate for decision without oral argument. *See* Fed.R.Civ.P., 78(b); Local Rule 7–15. Accordingly, the hearing set for January 14, 2008 was removed from the Court's calendar. For the reasons and in the manner set for the below, the Court hereby GRANTS Defendant's Motion to Confirm the Arbitration Award and GRANTS Defendant's Motion to Dismiss, construed here as a motion for summary judgment.

### I. Background

This cases arises from a dispute over credit card debt between the plaintiff cardholder, Benjamin Millan ("Millan") and defendant credit card issuer, Chase Bank USA, N.A. ("Chase"). Millan entered into a credit card agreement with Defendant in January 2003. (Compl. ¶ 3; Millan Decl. ¶ 2; Decl. Milissa Rutledge ¶ 4.) Chase "invariably" sends every new credit card account holder a copy of the standard "Cardholder Agreement" enclosed with the new credit card, by mail. (Rutledge Decl. ¶ 5.) The agreement in effect in January 2003 included the following provisions:

Any uses of your Card of Account confirms your acceptance of the terms and conditions of this Agreement.

. . .

All payments must be made in U.S. dollars. Any payment made by check or other negotiable instrument must be drawn on a U.S. bank or U.S. branch of a foreign bank. . . .

. . .

Arbitration: Any claim, dispute or controversy ("Claim") by either you or us against the other . . . including Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved by binding arbitration by the National Arbitration Forum. . . . This arbitration clause is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16. Judgment upon any arbitration award may be entered in any court having jurisdiction, . . .

IN THE ABSENCE OF THIS ARBITRATION AGREEMENT YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR A JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS), BUT EXCEPT AS OTHERWISE PROVIDED ABOVE, THOSE RIGHTS, INCLUDING ANY RIGHT TO A JURY TRIAL, ARE WAIVED AND ALL CLAIMS MUST NOW BE

RESOLVED THROUGH ARBITRATION.

. . .

Changes in This Agreement: We can at any time change this Agreement . . . and can delete provisions relating to your Account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. We will notify you of any change, addition, or deletion. . . . You will be deemed to accept all the changes, additions, and deletions described in previous notices sent to you if: (1) you do not send us such a notification [of rejection]-in a timely manner, or (2) you use the Card of Account after the conclusion of the specified time period.

. . .

GOVERNING LAW: THIS AGREEMENT AND YOUR ACCOUNT WILL BE GOVERNED BY THE LAW OF THE STATE OF DELAWARE AND, AS APPLICABLE, FEDERAL LAW.

(January 2003 Card Member Agreement, Rutledge Decl. Ex. A.) Millan, however, recalls that the parties original agreement "did not contain any provision or clause to submit any dispute arising out the agreement to arbitration." (Compl. ¶¶ 21–22; Millan Decl. ¶ 4.) In addition, Millan recalls that the original contract "did not contain any provision that would allow Defendant to change or add new terms . . . to include arbitration." (Compl. ¶ 22; Millan Decl. ¶ 3.)

Plaintiff first made charges to the credit card in February 2003. (Rutledge Decl. Ex. B.) In April 2005, Chase mailed Millan a notice of changes to the Card Member Agreement. (*Id.* ¶¶ 9, 11, Ex. C.) The notice, entitled "IMPORTANT NOTICE FOR CREDIT CARD CUSTOMERS ABOUT CHANGES TO YOUR CARD-MEMBER AGREEMENT—PLEASE READ AND RETAIN FOR YOUR RECORDS," includes the following:

3. ARBITRATION: The following replaces the section entitled "ARBITRATION":

ARBITRATION AGREEMENT: PLEASE READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. BINDING ARBITRATION REPLACES THE RIGHT TO GO TO COURT. . . . IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU OR WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS. . . . OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED. EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.

(Rutledge Decl. Ex. C.) The notice provides that the cardholder can reject the changed terms by notifying Chase in writing by May 21, 2005. (*Id.*) Making charges to the card after June 1, 2005 would be deemed acceptance of the new terms. (*Id.*) Chase did not receive a written notice of rejection from Millan. (Rutledge Decl. ¶ 11.) Millan made charges to the account after June 1, 2005. (*Id.* ¶ 12, Ex. B.) Millan contends that he never received a copy of any changes Defendant made to the original agreement. (Compl. ¶ 26, Millan Decl. ¶¶ 5–6.)

In January 2006, Millan's account with Chase became delinquent for nonpayment. (Rutledge Decl. ¶ 14.) On January 23, 2006, Millan made a billing inquiry with Chase, ostensibly pursuant to the Truth in

Lending Act ("TILA"), 15 U.S.C. § 1666(a), to which Chase never responded.[1] (Compl.¶¶ 8–12.) The letter from Millan to Chase read in part:

I am writing regarding the above account. I believe that my most recent statement, February 3, 2006, is inaccurate.

I am disputing the above amount because I believe that you failed to credit my account for prepayments you agreed to credit on the statement dated February 3, 2006. It was my understanding that when I entered into the agreement with you that you would accept my signed note(s) or other similar instrument(s) as money, credit or payment for previous account transactions, and then reflect those credits in the statement dated February 3, 2006.

. . .

I am also requesting additional documentary evidence of indebtedness of the account showing that you did not accept any note or similar instrument from me without properly crediting my account as agreed, which includes copies of the account entries that made you arrive at the recent balance shown on my statement.

. . .

I may exercise my right to withhold the disputed amount until you comply. (Rutledge Decl. Ex. D.) Millan alleges that after receiving this inquiry, Chase wrongfully reported Millan to the credit reporting agencies as delinquent; proceeded to collections; and filed a claim with the National Arbitration Forum ("NAF"). (Compl. ¶¶ 15–18, 34.) Chase filed a claim with the NAF in June 2006. (Rutledge Decl. Ex. E.)

Millan insists that he did not consent to arbitration before the NAF, and he filed an objection there. (Compl. ¶ 26; Millan Decl. ¶ 12.) In his objection, Millan asserts "[t]hat I never consented or agreed to any contract of adhesion containing a forum selection clause that would subject me to the jurisdiction of the [NAF], or any other Arbitration forum ... I discharge and prohibit the [NAF] from making any award or taking any action whatsoever, except to dismiss the case for lack of jurisdiction.... I will not respond to any further communications regarding this Arbitration Claim." (Rutledge Ex. F.)

The arbitration nonetheless went forward, and the arbitrator awarded Chase $4,789.43. (Compl.¶ 29.) The arbitrator specifically found that the matter was governed by the Federal Arbitration Act. (Rutledge Ex. F.) Millan alleges that Defendant failed to provide a certificate on the arbitrator, and failed to properly serve him with a copy of the arbitrator's award, as required by California state law. (*Id.* ¶¶ 27, 30–31.)

Millan filed suit in Superior Court on March 19, 2007. Chase timely removed the case to this Court. Plaintiff alleges violations of TILA, breach of contract, and infringement of his right to due process. Millan also petitioned the court to vacate the arbitration award. Chase has filed a

---

**1.** Defendant Chase argues that Millan's suit is traceable to an internet scheme targeting unwary consumers seeking debt relief. Affidavit Lance Taylor–Warren (consumer credit card account holder describing his purchase of a debt-relief program from North American Educational Services ("NAES")); Decl. George C. Weikhardt (describing five similar lawsuits filed in California against Chase in which plaintiffs used nearly identical documents, obtained from NAES, as those presented here by Plaintiff Millan.) The Court draws no inference from this evidence beyond concluding that Judge Alsup's decision in *Carmack v. The Chase Manhattan Bank (USA)*, 521 F.Supp.2d 1017 (N.D.Cal.2007), dealing with a nearly identical suit, is an appropriate document for judicial notice. Defendant's request for judicial notice of the *Carmack* decision is hereby granted. *See* Fed.R.Evid. 201(b), (d).

counterclaim, seeking confirmation of the arbitration award, judgment on the award, and attorneys' fees and costs. Chase now brings this Motion to confirm the arbitration award and to dismiss Millan's Complaint, or in the alternative, for summary judgment.

## II. Standard of Law

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court limits its inquiry to the content of the complaint and matters of which the Court may take judicial notice. *See, e.g., Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005). A court may, however, consider documents not explicitly incorporated in the complaint and not attached to the complaint, but whose authenticity is not questioned and upon which the complaint necessarily relies. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998). When the court considers materials *outside* the pleadings, it treats the motion as one for summary judgment, governed by Rule 56. *In re Rothery*, 143 F.3d 546, 549 (9th Cir.1998); 2 MOORE'S FEDERAL PRACTICE § 12.34[3][a].

Here, Defendant has submitted extrinsic materials, namely: (1) the original 2003 and modified 2005 credit card agreements between Millan and Chase; (2) Millan's billing statements from February 2003 through October 2006; (3) Millan's letter to Chase informing Chase of a billing error and Millan's intent to withhold payment; and (4) records of the arbitration proceedings. The authenticity of items (2)-(4) is undisputed and the Court finds them indispensable to the resolution of this Motion. With respect to the cardholder agreements

submitted by Chase, Millan insists that "the agreement submitted by [Chase] is not the agreement governing the account in dispute, rather it appears to be a fraudulent document asserted by [Chase] intended to deprive [Millan] of his right to access the courts." Pl's. Opp'n at 2. Millan provides no support for this statement.[2] Defendant has submitted a copy of this agreement, which was enclosed with the original credit cards sent to Millan. Rutledge Decl. Ex. A. The Court is satisfied that Chase has submitted the parties' original agreement, and will consider it in deciding this Motion.[3] Accordingly, the Court treats Defendant's Motion to Dismiss as a Motion for Summary Judgment.

## III. Discussion

### A. First Cause of Action: Violation of TILA

Millan alleges that Defendant violated the Truth in Lending Act ("TILA") by failing to respond to a billing inquiry and then referring his account to a collection agency and proceeding with arbitration. The TILA provision at issue reads in relevant part:

> If a creditor, within sixty days after having transmitted to obligor a statement of the obligor's account in connection with an extension of consumer credit, receives ... a written notice ... from the obligor in which the obligor—
>
> (1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,

---

**2.** Although he asserts that he does not have a copy of the agreement and will seek one in discovery, Millan makes a number of claims about the content of the 2003 cardholder agreement. *See supra* page 1063.

**3.** As the original agreement was sent with the credit card, and Millan subsequently used the

credit card, the Court concludes that Millan received a copy of the original agreement. However, because Millan attests that he never received a copy of the 2005 revised agreement, the Court does not rely on that document.

(2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and (3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error,

the creditor shall [acknowledge receipt of the obligor's notice and conduct an investigation].

15 U.S.C. § 1666(a). The statute defines a billing error as:

(1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.

(2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.

(3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.

(4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.

(5) A computation error. . . .

(6) Failure to transmit the statement. . . .

*Id.* § 1666(b).

The creditor must receive the credit card holder's (*i.e.,* the obligor's) written notice "no later than 60 days after the creditor transmitted the first periodic statement that reflects the alleged billing error." 12 C.F.R. 226.13(b)(1). The creditor must acknowledge receipt within 30 days. 15 U.S.C. § 1666(a)(3)(A). Next, the creditor must investigate the matter and either: (1) correct the error and refund any associated charges, or (2) send the obligor a written explanation of the reasons why the creditor has concluded

the charges are correct. *Id.* § 1666(a)(3)(B)(i)-(ii). During this time, the creditor may not attempt to collect the disputed amounts. *Id.* § 1666(c).

■ Here, Millan's written notice does not comply with the requirements of the statute. Millan points to the entire amount due listed on the statement, $2,953.43, as the amount in dispute. Nowhere in the letter does Millan set forth the reasons for his belief that the statement contains a billing error, as required by 15 U.S.C. § 1666(a). Instead, Millan vaguely asserts, ". . . I believe you failed to credit my account for prepayments you agreed to credit on the statement dated February 3, 2006. It was my understanding when I entered into the agreement with you that you would accept my signed note(s) . . . as money, credit or payment for previous account transactions. . . ." Presumably, Millan would know when, and in what amount, he made such prepayments so that he could identify them in his letter to Chase. Millan, however, does not do so, except to say that the prepayments likely add up to the entire amount owing on his most recent statement. In addition, Millan's assertion that Chase would accept anything other than *actual* money, or a check drawn on a U.S. bank, as payment is strange. The Court concludes that Millan's notice of billing error did not meet TILA's requirement to "set[ ] forth the *reasons* for the obligor's belief (to the extent applicable) that the statement contains a billing error." 15 U.S.C. § 1666(a)(3) (emphasis added). Accordingly, Chase was not required by law to respond and no violation of 15 U.S.C. § 1666(c) was possible. Plaintiff's claims under TILA fail.

*B. Second Cause of Action: Breach of Contract*

■ The original cardholder agreement contains a valid choice of law provision.

Under California law, a court will enforce a choice of law provision if either (1) "the chosen state has a substantial relationship to the parties or their transaction," or "there is any other reasonable basis for the parties' choice of law." *Wash. Mut. Bank v. Superior Court (Briseno),* 24 Cal.4th 906, 916, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001). If "either test is met, the court must next determine whether the chosen state's law is contrary to the fundamental policy of California." *Id.* If it is not, the court will enforce the choice of law provision.

■ Here, the original cardholder agreement states that Delaware law and federal law will apply. As stated earlier, the Court has concluded that there is no genuine dispute that Millan received the original agreement, which was mailed to him with the credit card.[4] As Chase is a Delaware corporation, Delaware has a "substantial relationship" with Chase, justifying the choice of Delaware law as the governing law of the agreement. Furthermore, as applied to this case, Delaware law is not contrary to California's "fundamental policy." Under both California and Delaware law, an arbitration agreement in a contract of adhesion is enforceable absent circumstances rendering the agreement unjust. *Compare Wash. Mut. Bank,* 24 Cal.4th at 917–18, 103 Cal.Rptr.2d 320, 15 P.3d 1071 *and Edelist v. MBNA Am. Bank,* 790 A.2d 1249, 1260 (Del.Super.2001) (enforcing an arbitration clause in a credit card agreement). Accordingly, the Court applies Delaware law.

Millan argues that the agreement is invalid and he never agreed to arbitration; thus Chase's resort to arbitration violated the parties' agreement. The original agreement included an arbitration clause (set forth above) that clearly states the consequences of agreeing to arbitration, including waiver of the right to a jury trial. The arbitration clause is mutual, requiring that both Chase and Millan bring any claims they may have against the other in an arbitral forum.

■ Where, as here, the challenge is to the validity of the contract in its entirety, rather than to the contents of the arbitration clause, the arbitrator decides. *See Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). The arbitrator in this case found that "the Parties entered into a written, valid agreement to arbitrate their dispute." Rutledge Decl. Ex. G. The Court concludes, based on the arbitrator's findings, that the parties agreed to arbitrate their dispute in accordance with the valid cardholder agreement. Accordingly, Chase did not breach its agreement with Millan when it sought resolution its claim before the NAF. Plaintiff's breach of contract claim fails.

### C. Third Cause of Action: Due Process

■ Millan has not demonstrated, or even alleged with minimal specificity, that arbitration before the NAF violates his right to due process under the law. The NAF's procedures have been cited approvingly by the Supreme Court and lower courts for their fairness in preserving procedural protections. *See Carmack* at 1025–26 (citing *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 95 n. 2, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (Ginsburg, J., dissenting) (naming the NAF as an arbitration organization that has "developed [a] model[ ] for fair cost and fee allocation.")) and additional references therein. In addition, Millan had an opportunity to present his case to the arbitrator: He chose not to do so. Accordingly, Millan's due process claim fails.

---

4. Millan argues, without support, that the choice of law provision is invalid because he "repudiated" the original agreement. Pl.'s Opp'n at 3.

*D. Confirmation of the Arbitration Award*

Millan has petitioned the court to vacate the arbitration award, while Chase filed this Motion seeking confirmation of the award. The Court must confirm the award ".unless the award is vacated, modified, or corrected" as provided by sections 10 and 11 of the Federal Arbitration Act. 9 U.S.C. § 9. The only bases to vacate an award are: (1) fraud or corruption in procuring the award; (2) partiality or corruption of the arbitrator; (3) arbitrator misconduct prejudicing a party; (4) the arbitrator exceeded his power; or (5) evident material mistake or miscalculation in the award. *Id.* §§ 10, 11. Absent such "a manifest disregard for the law," a court will not vacate an arbitration award. *G.C. & K.B. Invs., Inc. v. Wilson,* 326 F.3d 1096, 1104 (9th Cir.2003).

 Here, Millan does not make out a claim on any of these bases. He makes two arguments. First, Millan points to his "repudiation" of the arbitration agreement as a basis to vacate the award. He argues that he filed his objection to the arbitration, and the arbitrator made an "unauthorized" determination of arbitrability and entered the award against him nonetheless, in violation of California Code of Procedure § 1281.2 *et seq.* As explained above, the parties' original agreement is governed by Delaware law and federal law, not California law. The applicable law here, as laid out in the agreement, is federal law. In addition, as previously explained, the arbitration was proper under the terms of the original agreement.

Second, Millan states that NAF arbitrators cannot be neutral because they rely on Chase for business, and thus they "have a pecuniary interest in the cases they hear." Pl.'s Opp. at 6. The Ninth Circuit has held that "the party alleging evident partiality ... must establish specific facts which indicate improper motives." *Woods v. Saturn Distrib. Corp.,* 78 F.3d 424, 427 (9th Cir.1996.) Millan has not done so. Rather, he has made unsupported general observations about the "symbiotic relationship" between NAF and Chase. This is insufficient to establish a basis to vacate the award. Accordingly, Plaintiff's petition to vacate the arbitrator's award is denied; Chase's motion to confirm the award therefore is granted.

**IV. Conclusion**

The Court GRANTS summary judgment to Defendant with respect to Plaintiff's Truth in Lending Act, breach of contract, and due process claims. Plaintiff's petition to vacate the arbitrator's award is DENIED. Defendant's motion to confirm the award is GRANTED.

Counsel for Chase shall prepare and submit a proposed Judgment consistent with this order.

IT IS SO ORDERED.