## A08A0601. LEAGUE v. CITIBANK (SOUTH DAKOTA).
### (663 SE2d 266)

PHIPPS, Judge.

Appearing pro se, Joseph League appeals from a grant of summary judgment to Citibank (South Dakota) concerning his indebtedness under a credit card agreement. League argues that he should be released from paying the debt on account of Citibank's failure to respond to his written notice of its alleged acceptance of League's "signed note(s) or other similar instrument(s)" in satisfaction of the debt. We disagree and affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[1] A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the nonmovant.[2]

So viewed, the record shows that shortly after Citibank increased League's credit limit from $21,800 to $24,000, League transferred balances amounting to $13,100 to his Citibank account. League made payments and purchases through February 2006, with his last payment made on February 14.

League did not make any payment under his February 23, 2006 statement, which listed a balance of $22,049.46 and asked for payment by March 21. Instead, on March 20, he sent Citibank a letter disputing the February 23 statement because Citibank had "failed to credit my account for prepayments you agreed to credit on [that] statement." League claimed that he and Citibank had "en-

---

[1] *Walker v. Gwinnett Hosp. System*, 263 Ga. App. 554, 555 (588 SE2d 441) (2003) (citation and punctuation omitted).

[2] *Ethridge v. Davis*, 243 Ga. App. 11, 12 (530 SE2d 477) (2000).

tered into [an] agreement . . . that you would accept my signed note(s) or other similar instruments(s) as money, credit or payment for previous account transactions"; that Citibank should have "reflect[ed] those credits" in the February 23 statement; and that "[t]he amount of the credits on the prepayments of money or credit accepted by you should be the approximate amount" of the February 23 statement. The letter also noted that League was "uncertain of all the dates of the prepaid credits" and that "there may be additional credits that I am entitled to." Finally, League requested a written explanation of the alleged error and noted that he might "exercise my right to withhold the disputed amount until you comply." Citibank did not respond to League's letter.[3]

League made no further payments on the account, which was closed in May 2006 with a balance of $24,055.22. Citibank brought an action seeking this amount and later moved for summary judgment, which the trial court granted on grounds including that League's letter was not specific enough to trigger any duty to investigate by Citibank.

As a preliminary matter, we note that League's brief on appeal does not contain any citations to the record. "The burden is upon the party alleging error to show it affirmatively in the record."[4] Although League is proceeding pro se, "that status does not relieve him of the obligation to comply with the substantive and procedural requirements of the law, including the rules of this court."[5]

1. League argues that the grant of summary judgment is invalid because no transcript of the proceedings was taken. But because the purpose of a hearing on motion for summary judgment is to hear legal argument rather than to receive evidence,

> the transcript is not usually necessary in an appeal from the grant of a motion for summary judgment. Legal argument presented to the trial court as to whether the material already on file authorizes the grant of summary judgment is not evidence. It is the evidence of record, not the assertions

---

[3] League claims that his letter was "composed originally by highly trained attorneys who specialized in this type of situation." For suits involving virtually identical language concerning "signed note(s) or other instrument(s)" as part of "an internet scheme targeting unwary consumers seeking debt relief," see *Millan v. Chase Bank USA*, 533 FSupp.2d 1061, 1064-1066, n. 1 (C.D. Cal. 2008); *Carmack v. Chase Manhattan Bank*, 521 FSupp.2d 1017, 1023 (N.D. Cal. 2007).

[4] *Simon v. City of Atlanta*, 287 Ga. App. 119, 120 (1) (650 SE2d 783) (2007) (citation and punctuation omitted).

[5] Id. (citation omitted); see also Court of Appeals Rule 25 (c) (2) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of such reference, the Court will not search for or consider such enumeration.").

and objections made by counsel at the hearing, which determines the validity or invalidity of the grant of summary judgment.[6]

This argument therefore lacks merit.

2. League asserts that his March 20, 2006 letter gave him the right to withhold payments on the account and also required Citibank to investigate before imposing any additional charges or closing the account. We disagree.

Section 1666 (a) of the Fair Credit Billing Act ("FCBA")[7] provides that a consumer seeking to contest a charge must give written notice of a "billing error" within 60 days of receiving the statement containing the alleged error. The consumer's written notice must

(1) set[ ] forth or otherwise enable[ ] the creditor to identify the name and account number (if any) of the obligor,

(2) indicate[ ] the obligor's belief that the statement contains a billing error and the amount of such billing error, and

(3) set[ ] forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error.[8]

On receiving such written notice, the creditor must "send a written acknowledgment thereof to the obligor," and then either "(i) make appropriate corrections in the account of the obligor" or "(ii) send a written explanation or clarification to the obligor, after having conducted an investigation."[9] Section 1666 (b) defines a "billing error" as including "[t]he creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor."[10] Finally, although subsection (e) of the same statute provides that a creditor who fails to comply with FCBA requirements "forfeits any right to collect from the obligor the amount indicated by the obligor," such forfeiture is limited to $50.[11]

The federal regulation promulgated to enforce this section of the FCBA, 12 CFR § 226.13 (often referred to as "Regulation Z"),

---

[6] *Baker v. Brannen/Goddard Co.*, 274 Ga. 745, 747 (1) (559 SE2d 450) (2002) (citations and punctuation omitted).

[7] 15 USC § 1666 et seq.

[8] 15 USC § 1666 (a).

[9] Id.

[10] 15 USC § 1666 (b) (4).

[11] 15 USC § 1666 (e).

further defines a "billing error notice" as written notice that (1) is received no later than 60 days after the transmission of the statement reflecting the alleged error; (2) "[e]nables the creditor to identify the consumer's name and account number"; and (3) *"[t]o the extent possible, indicates the consumer's belief and the reasons for the belief that a billing error exists, and the type, date and amount of the error."*[12] But League's letter said only that he and Citibank had entered into some agreement, of unspecified date, "that [Citibank] would accept my signed note(s) or other similar instrument(s) as money, credit or payment for previous account transactions," and that "[t]he amount of the credits on the prepayments of money or credit accepted by [Citibank] should be the approximate amount" of the indebtedness. When League contested no specific transactions and did not specify what "prepayments" were meant or what "understanding" would lead Citibank to accept his notes as a form of payment, he failed to provide Citibank with notice of a billing error sufficient to trigger Citibank's duty to investigate under the FCBA.[13]

Once the party moving for summary judgment has made a prima facie showing that it is entitled to judgment as a matter of law, the nonmovant must then come forward with rebuttal evidence sufficient to show the existence of a genuine issue of material fact.[14] Here, Citibank has produced evidence showing that League requested and obtained the account, accumulated a balance in the amount of $24,055.22, and failed adequately to dispute any of the charges resulting in that balance. League has not come forward with rebuttal evidence concerning this indebtedness, and his letter concerning an unapplied credit was insufficient to require Citibank to respond to it. We therefore affirm the trial court's grant of summary judgment to Citibank.

3. We have considered League's remaining claims of error and conclude that they lack merit.

*Judgment affirmed. Johnson, P. J., concurs. Barnes, C. J., concurs fully and specially.*

BARNES, Chief Judge, concurring fully and specially.

I concur fully in the result and all that is said in the majority opinion. I write separately to give notice to the bench, bar, and public

---

[12] 12 CFR § 226.13 (b) (3) (emphasis supplied).

[13] See *Millan*, supra at 1066 (granting summary judgment to bank, which was not required to respond to notice of billing error concerning "signed note(s) as money, credit or payment") (punctuation omitted); *Carmack*, supra at 1023 (granting motion to confirm arbitration award against plaintiff where she asserted a billing error in identical terms but "utterly failed to identify any purported note" sent to her credit card issuer).

[14] *Weldon v. Del Taco Corp.*, 194 Ga. App. 174 (390 SE2d 87) (1990).

that League's "debt relief plan" from "North American Educational Services" (NAES) has been unsuccessful in numerous cases throughout the country. Naming the company may assist other courts who are analyzing similar issues. As noted in the majority, League, who says he is 86, asserts that his billing error letter was "composed originally by highly trained attorneys who specialize in this matter." Whether composed by specialists or not, this unconscionable scheme will not let a debtor obtain tens of thousands of dollars in cash and goods and then avoid paying the debt.

Pro se debtors have filed numerous actions against card companies using NAES methods; for example, in addition to the two California federal cases cited in the majority opinion, an unpublished April 2008 case from Kansas quotes almost verbatim the letter League used here. A third opinion issued less than a month ago in New York refers to a number of similar cases filed there:

> Defendant notes that plaintiff used a debt elimination scheme generated by Debt Relief Services Company (or known as North American Educational Services) to eliminate debts by frustrating creditors with frivolously claimed billing errors and ultimately commencing pro se litigation against the creditors ([defendant's memo] citing, as an example, another pro se action pending in this Court, *Lysakawa v. Chase Bank USA*, No. 07CV89A(Sc) . . .).

*Kryszak v. Chase Bank USA*, No. 07CV202A, 2008 U. S. Dist. LEXIS 24323 (W.D. N.Y. 2008).

This "[I]nternet scheme targeting unwary consumers seeking debt relief" appears to be a fairly recent enterprise, because all of these opinions involving this method of "relief" were issued in 2007 and 2008. More cases will be coming, more opinions will be issued, and the public should learn before it is too late that its resources could be put to better use than buying this debt relief plan.

DECIDED MAY 19, 2008 —
RECONSIDERATION DENIED JUNE 11, 2008.

Joseph C. League, *pro se*.
*Mann & Bracken, M. Douglas Mann, Joseph C. Cooling*, for appellee.