**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 31, 2016**

# In the Court of Appeals of Georgia

A16A0009. HOUGHTON v. SACOR FINANCIAL, INC.

PHIPPS, Presiding Judge.

Sacor Financial, Inc. sued Harry A. Houghton, III, alleging that Houghton owed it monies stemming from unpaid credit card charges. Sacor filed a motion for summary judgment, which the trial court granted. In this appeal, Houghton contends that the trial court erred because, inter alia, there was evidence that suit was not timely commenced. We agree with Houghton that, given such evidence, summary judgment was not authorized. Therefore, we reverse.

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."[1] "In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant."[2]

On June 15, 2012, Sacor filed a two-paragraph complaint against Houghton, alleging therein that "Defendant is indebted to Plaintiff in the sum of $16,295.88 principal, plus interest, on an account." More than a year later, Sacor filed an affidavit that service of process had been effected upon Houghton on September 10, 2013. Amongst the defenses raised by Houghton in his answer was that Sacor's suit was time-barred.

In April 2015, Sacor filed a motion for summary judgment. In its supporting brief, Sacor expressly identified its cause of action as breach of contract, outlining its theory of liability as follows:

> *[Houghton] applied for and received a [Circuit City Rewards] credit card account from [Sacor's] Assignor, Chase Bank USA, N.A.* This credit card account was opened and activated for [Houghton's] use and benefit and was designated as Account No. **9044. Upon receipt of the Circuit City Rewards credit card, [Houghton] proceeded to make

---

[1] OCGA § 9-11-56 (c).

[2] *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted).

charges on the account for an extended period of time. *Pursuant to the underlying cardholder agreement, [Sacor's] Assignor would send monthly statements to [Houghton] detailing the status and history of the account, as well as the balance owed at the end of each monthly billing cycle.* Upon receipt of the statement, [Houghton] would be required to at least submit the minimum payment, which fluctuated depending on the balance owed and other factors. The credit extended by [Sacor's] Assignor was done so with the express intent that [Houghton] would make at least the minimum payment due each month and that [Houghton] would eventually pay the debt in full. Despite [Sacor's] Assignor's policy concerning the minimum payment due at the end of each monthly billing cycle, *[Houghton] failed to make these payments, constituting a material breach of the underlying cardholder agreement and rendering [Houghton] in material default of the contract.* As a result of the default, [Houghton's] account was formally declared in default and charged-off by the original creditor. At the time of the charge-off, [Houghton's] entire balance in default became immediately due and payable. At the time of the charge-off, the unpaid balance in default on the credit card account was $16,295.88, please see [Sacor's] Affidavit of Claim and Exhibit "A" attached thereto.[3] Since the time

---

[3] The relied-upon documents included: (a) numerous monthly billing statements sent by "Chase Cardmember Service" to "Harry A. Houghton III" in connection with an account ending in "9044" for transactions at "Circuit City" stores – the most recent of which statements showed a "New Balance" of $3,624.27 and set forth a "[minimum] payment due date" of May 5, 2006; and (b) a single billing statement sent by Sacor to Houghton, which statement pertained to an account ending in "9044," showed a "New Balance" of $16,295.88, and set forth a payment due date of April 4, 2012.

of the charge-off, interest was accrued on this principal balance at the rate of 26% per annum, through the time of the filing of this Motion, in the amount of $15,985.95. . . . [Houghton's] contract and account with Chase Bank USA, N.A. was validly and completely assigned to [Sacor], and [Sacor] has been assigned all rights, title, and interest to the contract. A true and correct copy of the Assignment charting the chain of title is attached to [Sacor's] Affidavit of Claim as Exhibit "B," filed herewith.[4]

Sacor stated in its brief, "With this Motion for Summary Judgment, [Sacor] seeks the principal balance of $16,295.88 as damages, along with interest of $15,985.95 and court costs of $178.00."

Opposing Sacor's motion, Houghton advanced, inter alia, his statute of limitation defense. According to Houghton, Sacor's breach of contract action was subject to either a four-year or a six-year statute of limitation;[5] and even if the longer

---

[4] (Emphasis supplied.) The relied-upon documents included: (a) a May 10, 2006 "Bill of Sale and Assignment of Assets," from "Chase Bank USA, N.A. (Assignor)" to "National Credit Acceptance"; and (b) a November 15, 2010 "Bill of Sale" of certain "loans" from "National Credit Acceptance, Inc." to Sacor.

[5] See generally OCGA §§ 9-3-24 (providing in pertinent part, "All actions upon simple contracts in writing shall be brought within six years after the same become due and payable."); 9-3-25 (providing in pertinent part, "All actions upon open account, or for the breach of any contract not under the hand of the party sought to be charged, or upon any implied promise or undertaking shall be brought within four years after the right of action accrues.").

period applied, Houghton argued, Sacor's own evidence authorized a finding that the action was untimely.

But three days after Houghton filed his response, the trial court entered an order drafted by Sacor's counsel, summarily finding "no genuine issues of material fact," thus granting Sacor's motion, and thereby holding Houghton liable "for the principal sum of $16,295.88, interest of $15,985.95, and court costs of $178.00."

1. Houghton contends that, in light of evidence that suit was time-barred, the trial court erred in granting Sacor's motion.

(a) "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."[6] Citing *Hill v. American Express*,[7] Sacor asserts that "[t]he statute of limitations in a credit card action is six (6) years."

---

[6] *Norton v. Budget Rent a Car System*, 307 Ga. App. 501, 502 (705 SE2d 305) (2010) (punctuation and footnote omitted).

[7] 289 Ga. App. 576, 577 (1) (657 SE2d 547) (2008) (determining that an action to recover for unpaid credit card charges was governed by OCGA § 9-3-24).

In *Hill*,[8] American Express sued one of its cardholders to recover unpaid credit card charges.[9] At issue there was whether such claim was subject to a four-year limitations period (set forth in OCGA § 9-3-25) or to a six-year limitations period (set forth in OCGA § 9-3-24).[10] Determining that the claim was subject to the latter, *Hill* noted that "American Express has submitted a copy of the contract between the cardholder and the Bank";[11] *Hill* went on to explain, "In this case, there is a simple contract in writing. That the contract was agreed to [by the cardholder], not by signature, but by use of the card does not take it out of OCGA § 9-3-24."[12]

According to Sacor's theory of liability, "[Houghton] applied for and received a [Circuit City Rewards] credit card account from [Sacor's] Assignor, Chase Bank USA, N.A." But Sacor has cited nothing in the record as the underlying written contract between Houghton and Chase Bank USA, N.A. – or any other bank. Even accepting arguendo Sacor's apparent assertion that its breach of contract action is

---

[8] Supra.

[9] Id. at 576.

[10] Id. at 576-577.

[11] Id. at 577 (2), n. 2.

[12] Id. at 578 (2).

6

governed by OCGA § 9-3-24, we agree with Houghton that the evidence of record demonstrates that summary judgment was not proper.

"Under OCGA § 9-3-24, an action for breach of a written contract must be brought within six years of the breach."[13] Notably, Sacor did not allege *any* precise date when Houghton breached the underlying credit card contract he made with Chase Bank USA, N.A. Notwithstanding, as Sacor outlined in its theory of liability, it was Houghton's failure to make payments as demanded in monthly billing statements that "constitut[ed] a material breach of the underlying cardholder agreement and render[ed] [Houghton] in material default of the contract." As Houghton described in opposing Sacor's motion, Sacor presented "a smattering of account statements" that demanded payments from Houghton – the most recent of which set forth a payment due date of May 5, 2006.[14] To the extent that the record authorized a finding that Houghton did not make *that* payment,[15] the record further

---

[13] *Hamburger v. PFM Capital Mgmt.*, 286 Ga. App. 382, 384 (1) (649 SE2d 779) (2007).

[14] See footnote 3 (a), supra, and accompanying text.

[15] We will not speculate that Houghton was thereafter sent any such monthly billing statement with which he failed to comply (such that "breach" may have occurred at some later date). "[S]peculation which raises merely a conjecture or possibility is not sufficient to create even an inference of fact for consideration on

7

authorized a finding that Houghton was *then* in breach of the underlying credit card contract. Sacor's complaint was not filed, however, until June 2012. Given such evidence that Sacor's breach of contract action was not commenced within six years of the breach, the trial court was not authorized to hold Houghton liable as a matter of law.[16]

(b) Although Sacor advanced two arguments in an effort to preserve its favorable ruling, neither has merit.

(i) First, Sacor argues that it adduced evidence establishing that the applicable six-year period did not begin to run until April 4, 2012. Specifically, Sacor cites that after being assigned rights with respect to Houghton's credit card contract,[17] *it* sent Houghton a billing statement advising him that he owed to *it* $16,295.88 and that the

---

summary judgment." *Emory Univ. v. Smith*, 260 Ga. App. 900, 902, n. 7 (581 SE2d 405) (2003) (punctuation omitted). What is more, Sacor presented evidence that five days after the (May 5, 2006) due date set forth in the most recent billing statement, Chase Bank USA, N.A. entered into a "Bill of Sale and Assignment of Assets" (on May 10, 2006). See footnotes 3 (a) and 4, supra, and accompanying text.

[16] See OCGA § 9-11-56 (c); *Owen v. Mobley Constr. Co.*, 171 Ga. App. 462 (1) (320 SE2d 255) (1984) ("[T]he statute of limitations runs from the time the contract is broken and not at the time the actual damage results or is ascertained.") (citation and punctuation omitted).

[17] See footnote 4, supra, and accompanying text.

8

full amount was due on April 4, 2012.[18] Relying on other evidence that Houghton did not comply with *its* demand, Sacor posits, "the statute of limitation did not begin to run until, at the earliest, April 4, 2012," and that its action was thereafter timely commenced.

Sacor's argument disregards applicable law of assignments: "The assignee acquires all of the rights and remedies possessed by the assignor *at the time of the assignment, and takes the obligation, contract, chose, or other thing assigned subject to the same restrictions, limitations, and defects as it had in the hands of the assignor*."[19] Simply stated, "an assignee 'stands in the shoes' of the assignor and obtains no greater rights than the assignor possessed at the time of assignment."[20] Accordingly, Sacor did not obtain – by designating a later date for Houghton to pay *it* a certain amount – a new limitations period that would commence upon Houghton's failure to comply.[21]

---

[18] See footnote 3 (b), supra, and accompanying text.

[19] *Southern Telecom v. TW Telecom of Ga., LP*, 321 Ga. App. 110, 114 (3) (741 SE2d 234) (2013) (citation omitted and emphasis supplied).

[20] Id. (citations omitted).

[21] See *Pridgen v. Auto-Owners Ins. Co.*, 204 Ga. App. 322, 323 (419 SE2d 99) (1992) ("[I]t is well-established that an assignee has no more rights under the contract

(ii) Sacor next argues that it was entitled to prevail on its motion because Houghton presented neither an "affidavit [n]or any other evidence in support of [his] opposition to Sacor's claim and Motion."

This argument disregards applicable law of summary judgment: There is "no such thing as a default summary judgment."[22] Although Houghton did not *file* any responsive material, it did not "automatically follow that [Sacor's] motion should be granted."[23] "A motion for summary judgment should not be granted unless it affirmatively appears from the pleadings and evidence that the party so moving is entitled to prevail."[24] "Summary judgments enjoy no presumption of correctness on

---

than the assignor would have in dealings with the other contracting party and that an assignee takes the assignment subject to defenses against the assignor.") (citations and punctuation omitted).

[22] *Smith v. Atlantic Mut. Cos.*, 283 Ga. App. 349, 351 (1) (641 SE2d 586) (2007) (citation and punctuation omitted).

[23] *Sherman v. Thomas-Lane American Legion Post 597*, 330 Ga. App. 618, 621 (1) (768 SE2d 797) (2015) (punctuation omitted); see *Smith v. Lockridge*, 288 Ga. 180, 186 (4) (702 SE2d 858) (2010) ("OCGA § 9-11-56 (e) provides that in the face of a properly supported motion for summary judgment, 'an adverse party may not rest upon the mere allegations or denials of his pleading, but his *response*, by affidavits or as otherwise provided in this Code section, must *set forth* specific facts showing that there is a genuine issue for trial.'") (emphasis supplied).

[24] *Sherman*, supra (citation and punctuation omitted); see *Hall v. Massally*, 329 Ga. App. 136, 138 (1) (764 SE2d 161) (2014) ("The failure of a nonmoving party to

10

appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met."[25] As explained above, the record reveals that summary judgment was not proper.[26]

2. Given our reversal of the summary judgment,[27] we need not reach Houghton's remaining claims of error.[28]

*Judgment reversed. Dillard and Peterson, JJ., concur.*

---

file responsive material . . . does not automatically entitle the moving party to judgment for there is no such thing as a default summary judgment. To affirm a grant of summary judgment, it must affirmatively appear from the record that no question of material fact exists and the moving party is entitled to judgment as a matter of law.") (citations and punctuation omitted).

[25] *Cowart*, supra at 624 (1) (a) (citations omitted).

[26] See Division 1 (a), supra.

[27] Supra.

[28] See generally *Caraway v. Spillers*, 332 Ga. App. 588, 590 (5) (774 SE2d 162) (2015) ("Because we reverse [the grant of summary judgment], we need not reach other arguments raised by [the appellants/non-movants below].").