**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 2, 2021**

# In the Court of Appeals of Georgia

A21A1104. BRANCEWICZ v. SMS FINANCIAL P, LLC.

PHIPPS, Senior Appellate Judge.

SMS Financial P, LLC ("SMS") sued Leonard J. Brancewicz for credit line debt, and the trial court granted summary judgment to SMS. Brancewicz appeals that order. In his sole enumeration of error, Brancewicz argues that the trial court erred by granting summary judgment against him, as the guarantor, because the underlying written contract was not included in the record. For the reasons that follow, we affirm the trial court's judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). We review the trial court's

grant of summary judgment de novo, viewing the evidence, and all reasonable inferences drawn from the evidence, in the light most favorable to the nonmoving party. *Houghton v. Sacor Financial*, 337 Ga. App. 254, 254 (786 SE2d 903) (2016).

So viewed, the record shows that on December 6, 2006, Brancewicz completed a "Small Business Credit Application" for Penn Beaver Pharmacy Inc. (the "company"), requesting a $50,000 credit line from National City Bank.[1] Brancewicz signed the first page of the application as both an authorized representative (the company owner) and a guarantor of the credit line. Section 5 of the application stated that the authorized officer signing on behalf of the entity agreed to be bound by all applicable agreements containing the terms and conditions regarding the issuance of lines of credit to the entity and/or credit cards to employees, officers, directors, and associates of the entity. Brancewicz signed below this statement on the line designated for "Secretary/Assistant Secretary."

Under a heading titled "Small Business Premium Credit Line - Agreement and Personal Guaranties," the application noted:

---

[1] National City Bank originally issued the credit line. National City Bank later merged with PNC Bank, National Association, which assigned and sold the subject loan to SMS.

2

Subject to credit approval Bank will open the Small Business Premium Credit Line ("Account") at the owner's or Company's request. Bank will send a Small Business Premium Credit Line Agreement ("Agreement") to Company with Company's credit card(s). The Company promises to pay to the order of Bank or any subsequent holder in accordance with the Agreement, at the address listed on the monthly billing statement, the amount advanced pursuant to this application and the Agreement, including all principal, interest, fees and other charges outstanding. The signature of an owner or Company Authorized Signer on this application, the retention of checks or credit cards or the use of the Account in any way means that each Obligor agrees to all the terms of the Agreement as amended from time to time. . . .

With respect to the guarantor, the application specifically indicated that the guarantor's liability remained in effect even if changes were made to the application and agreement without his consent, that the credit company did not need to provide him any notice regarding changes made in the application or agreement, and that he waived *any* defense to his direct and absolute obligation to pay the indebtedness and any interest accruing on the indebtedness when it became due. The application also specified that the guarantor was responsible for paying the bank's costs and expenses, including attorneys' fees, incurred in connection with the enforcement of the guaranty.

A credit line account was opened, and Penn Beaver Pharmacy was mailed statements and account summaries from 2007 through 2015. These statements showed account activity, including cash advances, convenience checks, payments, and interest and fees. Beginning in December 2014, the account statements sent to Penn Beaver Pharmacy indicated late and overlimit fees had been assessed. And the January 26, 2015, account statement and summary showed that the account had been closed, presumably by PNC Bank due to the outstanding balance. Following the January 2015 statement, subsequent statements went unpaid, and a statement and account summary dated June 26, 2015, indicated an account "charge off" of $99,119.66 in principal and $3,496.30 in finance charges.

In February 2019, SMS sued Brancewicz, alleging that "[Brancewicz] is indebted to [SMS] in the sum of $99,119.66 principal, plus interest, on a contract, as shown with particularity by the documentation attached [to SMS's complaint] as Exhibit 'A.'" Attached to the complaint was the "Small Business Credit Application" executed by Brancewicz as an authorized representative of Penn Beaver Pharmacy and guarantor of the account.

SMS subsequently moved for summary judgment. The motion included an affidavit from a managing member of SMS averring that he was familiar with the

4

lawsuit, the documents attached to his affidavit were made in the ordinary course of business and received or made at or near the time of the transaction, and Brancewicz was indebted to SMS in the amount of $99,119.66 plus interest. As an attachment to the affidavit, SMS submitted "a true and correct copy of the Small Business Credit Application applied for by Penn Beaver Pharmacy, Inc., which was also executed by Defendant Leonard J. Brancewicz as personal guarantor." Also attached to the affidavit were account ledger documents showing the principal balance and amount of accrued interest owed by Penn Beaver Pharmacy and Brancewicz as of September 17, 2019. A second affidavit from the same managing member of SMS included as attachments the account statements and summaries sent to Penn Beaver Pharmacy from 2007 through 2015, as well as a statement that the records were made in the ordinary course of business.

SMS subsequently filed an amended complaint, pursuant to OCGA § 13-1-11,[2] demanding attorney fees and legal expenses incurred to enforce the guaranty. It then amended its motion for summary judgment to include a claim for those fees and

_____

[2] This statute generally provides that a lender may enforce an obligation in a note or other evidence of indebtedness to pay attorney fees as part of the debt if certain conditions have been met.

expenses. The trial court granted SMS's motion for summary judgment in its entirety. This appeal followed.

In his sole enumeration of error, Brancewicz argues that the trial court erred by granting summary judgment to SMS because SMS failed to establish the existence and terms of the underlying contract. Specifically, Brancewicz asserts:

> The single most important fact on this appeal is this: the "Small Business Premium Credit Line Agreement" that is repeatedly referred to in the Small Business Credit Application as the "Agreement" and upon which [SMS's] contract claim depends appears nowhere in the record.

(Emphasis omitted.) According to Brancewicz, SMS cannot prove his personal liability without producing the "agreement" discussed in the application. We disagree.

To demonstrate that it was entitled to judgment against Brancewicz on the credit line account, SMS "was required to show that [Penn Beaver Pharmacy, with Brancewicz as guarantor] entered into an agreement or established an account with [National City Bank, which later merged with PNC Bank], accumulated a balance and failed to pay." *Melman v. FIA Card Svcs.*, 312 Ga. App. 270, 272 (2) (718 SE2d 107) (2011). SMS was required only to produce copies of the records "that were *pertinent* to [Brancewicz's] debt." Id. at 272-273 (2) (a copy of the signed credit application

was not required for summary judgment against the borrower); see also generally *League v. Citibank*, 291 Ga. App. 866, 869 (2) (663 SE2d 266) (2008) (summary judgment for creditor affirmed where creditor produced evidence that the debtor requested and obtained the account, accumulated a balance, and failed to adequately dispute the charges resulting in that balance).

As this Court held in *Davis v. Discover Bank*, 277 Ga. App. 864, 865-866 (627 SE2d 819) (2006), the production of an actual signed contract is not required to establish the existence of valid credit card debt. In that case, this Court affirmed the grant of summary judgment to the creditor where the creditor produced (1) evidence that a credit card was issued to the debtor along with a document providing that if he used the card he accepted the agreement, (2) statements in the debtor's name that were mailed to the debtor and not returned as undelivered, and (3) an account statement showing the balance due. Id. We noted that a contract resulting in credit card debt is not effected at the time an application or agreement is signed; rather, "[t]he issuance of the card to the defendant amounted to a mere offer on plaintiff's part, and the contract became entire when defendant retained the card and thereafter made use of it. The card itself then constituted a formal and binding contract." Id. at 865 (citation and punctuation omitted); see also *Hill v. American Express*, 289 Ga.

7

App. 576, 578 (2) (657 SE2d 547) (2008) (a credit card contract may be created "not by signature, but by use of the card").

Based on this case law and the facts of the case, we conclude that, contrary to Brancewicz's argument, SMS was not required to produce the agreement that accompanied any credit cards or credit line account to prove the existence of his liability for the credit line debt. Instead, SMS was required to include only "copies of the records relied upon and referred to . . . that were *pertinent* to [Brancewicz's] debt." *Melman*, 312 Ga. App. at 272-273 (2) (citation omitted). We therefore must consider whether SMS included the pertinent records of Brancewicz's debt.

Here, SMS produced evidence showing that (1) Brancewicz, as the owner of Penn Beaver Pharmacy, applied for and obtained a credit line account on behalf of Penn Beaver Pharmacy, (2) Brancewicz individually guaranteed the account, (3) the line of credit was used beginning in June 2007, (4) Penn Beaver Pharmacy received and paid account statements from 2007 until 2014, (5) Penn Beaver Pharmacy eventually stopped paying on the account, and (6) the account ultimately accumulated a balance in the amount of $99,119.66 in principal. In addition, there is no evidence in the record that either Penn Beaver Pharmacy or Brancewicz disputed any of the charges, cash advances, or convenience checks resulting in the indebtedness. On the

8

basis of these undisputed facts, it is clear that there is an outstanding debt and that Brancewicz, as the guarantor, is responsible for that debt. See *Melman*, 312 Ga. App. at 272 (2); *League*, 291 Ga. App. at 869 (2).

"Once the party moving for summary judgment has made a prima facie showing that it is entitled to judgment as a matter of law, the nonmovant must then come forward with rebuttal evidence sufficient to show the existence of a genuine issue of material fact." *League*, 291 Ga. App. at 869 (2); accord *Melman*, 312 Ga. App. at 273 (2). Brancewicz has not come forward with rebuttal evidence concerning this indebtedness; he argues only that the absence from the record of the terms of the underlying agreement precludes summary judgment. To support this claim, he cites *Houghton*, 337 Ga. App. at 257 (1) (a), for the dubious proposition that summary judgment is not warranted where a copy of the underlying written contract is not in the record. However, this Court reversed summary judgment in that case not based on the failure to produce a written contract, but rather because the suit was not filed within the applicable statute of limitation. Id.

Notably, Brancewicz has cited no binding authority standing for the proposition that a copy of the credit agreement itself is an absolute requirement to establish a prima facie case in an action to collect from a guarantor on a line of credit

where, as here, the creditor has produced other evidence sufficient to establish the existence of the debt, the guaranty, and the obligation to pay. SMS has produced copies of the credit line account records that are pertinent to Brancewicz's liability as the guarantor in this case. We therefore affirm the trial court's grant of summary judgment to SMS.

*Judgment affirmed. Rickman, C. J., and McFadden, P. J., concur.*