## A03A0085. ROSE v. COMMERCIAL FACTORS OF ATLANTA, INC.
### (586 SE2d 41)

MIKELL, Judge.

Commercial Factors of Atlanta, Inc. ("CFA") filed suit on an open account against Terry Manufacturing Company ("TMC"), Floodgates, Ltd. ("Floodgates"), and its owner and president, Jon L. Pouncey. This interlocutory appeal arises out of the trial court's grant of CFA's motion to compel the deposition testimony of TMC's accountant, Richard S. Rose, C.P.A., and its denial of Rose's motion for protective order. We granted the interlocutory appeal to determine the applicability of the crime-fraud exception to the accountant-client privilege. "We review the court's discovery order under an abuse of discretion standard"[1] and affirm.

The undisputed facts show that CFA is in the business of purchasing accounts receivable, also known as "factoring." On August 10, 1994, CFA and Floodgates executed a security agreement, wherein Floodgates agreed to sell to CFA at a discounted price commercial accounts from Floodgates' sale of goods to customers. TMC was one of Floodgates' customers, and Floodgates sold goods on open account to TMC from 1996 until 1999. Floodgates sold TMC's accounts to CFA. CFA's president, Tracy Eden, deposed that CFA frequently extended credit to Floodgates, paying Floodgates for invoices before the debtor, in this case, TMC, paid CFA on the invoices. Eden explained that in the industry, there was a need constantly to review and increase credit limits to accommodate a client's growth. When TMC failed to pay CFA on its accounts, CFA requested from Floodgates information pertaining to the goods it sold to TMC and the reason that TMC was not paying its accounts. When Floodgates failed to respond, CFA filed this action.

In the course of the litigation, CFA noticed Rose's deposition. Rose had been retained by TMC to perform general auditing services,

---

[1] *Dikeman v. Mary A. Stearns, P.C.*, 253 Ga. App. 646, 647 (1) (560 SE2d 115) (2002).

which included auditing its financial statements. When initially deposed, Rose refused to answer any questions regarding TMC. CFA filed a motion to compel Rose's testimony, which was granted, and Rose was deposed a second time pursuant thereto. In the second deposition, Rose provided general information about the services he provided to TMC but refused to answer any questions about TMC's business operations on the ground that such disclosures would violate the accountant-client privilege.

CFA amended its motion to compel, and Rose filed a motion for protective order. The trial court ordered Rose to "promptly reappear to reconvene his deposition, and answer truthfully and completely, without raising the accountant-client privilege, all questions put to him that relate to his audits of TMC or to his communications with principals of TMC in connection with those audits." The trial court certified its order for immediate review, and we granted Rose's application for interlocutory review. We address simultaneously Rose's two enumerations of error, both of which contend that the trial court abused its discretion by ordering Rose to answer questions related to his audits of TMC's financial statements, which in effect voids the accountant-client privilege.

Generally, communications between accountants and their clients are privileged and may not be inquired into by a third party absent the client's consent.[2] Though the accountant-client privilege, which is analogous to the attorney-client privilege,[3] protects "communications occurring *after* a fraud or a crime has been completed . . . , [it does not protect] those which occur *before* the perpetration of a fraud or commission of a crime and which relate thereto."[4] "This is referred to as the crime-fraud exception."[5]

The crime-fraud exception does not require proof of the existence of a crime or fraud to overcome the claim that a communication is privileged.[6] Rather, its applicability depends upon whether a prima facie case has been made that the communication was made in furtherance of an illegal or fraudulent activity.[7] Prima facie evidence is that which, on its face, is good and sufficient to establish a given fact,

---

[2] OCGA § 43-3-32. See also *Roberts v. Chaple*, 187 Ga. App. 123, 124 (369 SE2d 482) (1988).

[3] *In re Fulton County Grand Jury Proceedings*, 244 Ga. App. 380, 382 (535 SE2d 340) (2000); *Gearhart v. Etheridge*, 232 Ga. 638, 641 (208 SE2d 460) (1974).

[4] *In re Hall County Grand Jury Proceedings*, 175 Ga. App. 349, 350 (2) (333 SE2d 389) (1985). See also *Atlanta Coca-Cola Bottling Co. v. Goss*, 50 Ga. App. 637 (1) (179 SE 420) (1935).

[5] *In re Fulton County Grand Jury Proceedings*, supra at 382.

[6] *In re Hall County Grand Jury Proceedings*, supra at 352 (3).

[7] Id. See also *In re Grand Jury Investigation (Schroeder)*, 842 F2d 1223, 1226 (11th Cir. 1987).

though it can ultimately be rebutted or contradicted.[8] Nonetheless, when prima facie "evidence is supplied [by the discovering party], the seal of secrecy is broken."[9] "The determination that a prima facie showing has been made lies within the sound discretion of the lower court [and] may not be disturbed on appeal absent an abuse of discretion,"[10] which we find did not occur here.

In this case, CFA presented deposition testimony of Floodgates' president, Pouncey, wherein he admits that the defendants submitted fake invoices and related delivery documents to CFA to obtain funds. The following colloquy occurred:

Q. You lied to Commercial Factors, the corporate entity, to secure additional funds from Commercial Factors?
A. Yes. . . .
Q. And Mr. Terry knew you were lying to Commercial Factors back in April of 1997; correct? . . .
A. I would have to say yes.
Q. And Mr. Terry knew that you were submitting these pretend delivery documents, bills of lading, purchase orders, with his signature on it, to the corporate entity Commercial Factors in order to obtain more money from Commercial Factors? . . .
A. Eventually.
Q. And Mr. Terry knew from your discussions with him that the invoices he was paying to the corporate entity Commercial Factors were not legitimate or valid invoices?
A. That's correct.
Q. This scheme continued for two and a half years, . . . what would occur is that you would factor an invoice through Commercial Factors, they would disburse funds to you, and then you would give those funds, or part of those funds, to Mr. Terry's company, to either reimburse it or pay it in advance for an older invoice that was coming due that Mr. Terry had to pay?
A. That's correct.

We agree with the trial court that this testimony constituted prima facie evidence of the existence of a fraudulent scheme. Rose argues that there was no prima facie case made because this evi-

---

[8] See *Coxon v. Lady Jane Shop, Inc.*, 169 Ga. App. 959, 960 (1) (315 SE2d 681) (1984) (physical precedent only).

[9] (Citation and punctuation omitted.) *Goss*, supra at 421 (2).

[10] (Punctuation omitted.) *In re Hall County Grand Jury Proceedings*, supra at 352 (3), quoting *In re Berkley & Co.*, 629 F2d 548, 553 (8th Cir. 1980).

dence was not credible. The credibility of evidence was a matter for the trial court. We cannot say that it abused its discretion by deciding that the deposition testimony at least raised a prima facie case.

As to the court's finding that the communications were made in furtherance of the fraudulent scheme, we again find no abuse of discretion. The evidence showed that Rose was TMC's only independent auditor, and he audited the company's financial statements from 1995 to 1998. The financial statements did not detail transactions between TMC and Floodgates, which would have affected CFA's decision to extend credit to Floodgates. But CFA submitted deposition testimony that it relied upon the audit reports generated from Rose's audit of TMC's financial statements to continue to extend credit to Floodgates. Thus, there is evidence that the audit reports were utilized by Pouncey and TMC in furtherance of Pouncey's attempt to secure additional credit from CFA. Whether Rose knew that the reports were used for that purpose is irrelevant.[11] Accordingly, we find no abuse of discretion in the trial court's grant of CFA's motion to compel.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED JULY 8, 2003 —
RECONSIDERATION DENIED JULY 29, 2003 — 

*Albert A. Mitchell & Associates, Albert A. Mitchell, James E. Kee,* for appellant.

*Smith, Gambrell & Russell, Thomas M. Barton, Matthew S. Coles,* for appellee.

---

[11] See *In re Grand Jury Investigation (Schroeder),* supra at 1227.