**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 14, 2016**

# In the Court of Appeals of Georgia

A16A0259. COHEN et al. v. ROGERS.

BARNES, Presiding Judge.

We granted this interlocutory appeal to consider whether the Cobb County trial court erred in granting the plaintiff's motion to disqualify two of the defendant's lawyers in this civil suit. The trial court based its disqualification order on several grounds, and the lawyers argue on appeal that the trial court abused its discretion. For the reasons that follow, we find no abuse of discretion in the trial court's disqualification order and affirm.

Until the trial court disqualified them in June 2015, attorneys David Cohen and John Butters had represented Mye Brooke Brindle for three years in a complex series of lawsuits between Brindle and her former employer, Joseph Rogers, Jr. In September 2012, Rogers sued Brindle, his former housekeeper, in Cobb County, asking the court to take possession and enjoin the dissemination of a video recording Brindle had made of a sexual encounter between herself and Rogers without Rogers'

consent or knowledge ("*Cobb 1*"). The complaint also included counts alleging invasion of privacy and intentional infliction of emotional distress because of the recording, and a count alleging that Brindle was unjustly enriched by working fewer than the number of hours for which she had been paid. In addition to general damages, Rogers sought the disgorgement of any excess payments Brindle received, punitive damages, and attorney fees. Brindle answered and counter-claimed for battery, intentional infliction of emotional distress, and breach of mediation confidentiality, among other things, seeking general damages, punitive damages, and attorney fees.

The parties commenced discovery. Brindle objected to three interrogatories and several deposition questions on the basis that certain information sought about the decision to make the video recording was protected by the attorney-client privilege, and in February 2013, Rogers filed a motion to compel her to respond to discovery. During a hearing on April 26, 2013, the trial court heard argument on several motions, including Rogers' motion to compel, which it took under advisement. After further briefing, on May 16, 2013, the trial court issued an order directing Brindle to appear in court "to be examined by the Court under oath about the circumstances surrounding the video and audio recordings in this case," so the court could determine

whether the crime-fraud exception to the attorney-client privilege applied. That hearing took place on May 21, 2013, with Brindle's lawyers present, and the trial court ordered that the transcript be sealed.

On June 14, 2013, the trial court granted Rogers' motion to compel, finding Brindle's attorney-client privilege was waived as to certain questions. Before making its ruling, the trial court viewed the impounded video and several audio recordings of Brindle and Rogers, and considered the testimony Brindle presented during the closed crime-fraud hearing and in deposition. The court reviewed the case law, under which the attorney-client privilege may be waived if a prima facie case is made that the communication was made to plan or further illegal or fraudulent activity, citing *Rose v. Commercial Factors of Atlanta*, 262 Ga. App. 528 (586 SE2d 41) (2003). The court then found that Brindle had violated OCGA § 16-11-62 by video-recording Rogers without his knowledge, and that a prima facie showing had been made that Brindle had been planning to make the video recording when she sought the advice of counsel, thus waiving her attorney-client privilege as to certain issues. The trial court ordered Brindle to respond to three specific interrogatories and allowed Rogers one hour to re-take Brindle's deposition to "ask only questions limited to 1) where and from whom the recording device was obtained; 2) under what circumstances the

recording device was obtained; and 3) who else besides [Brindle] was involved in planning the video recording." Four days later, on June 18, 2013, Rogers filed an emergency motion to disqualify Butters and Cohen as Brindle's counsel and to stay all discovery not pertinent to the discovery allowed in the June 14, 2013 order.

On June 19, 2013, the trial court granted Brindle's application for a certificate of immediate review of the discovery order and stayed all action in the case. In July 2013, this Court granted Brindle's application for an interlocutory appeal. The case was docketed in this court in late November 2013.

In May 2014, while the proceedings in *Cobb 1* were stayed during Brindle's appeal of the trial court's discovery order, Rogers filed a second suit in Cobb County against Cohen, Butters, and Hylton B. Dupree, Jr., who also represented Brindle, as well as the attorneys' business entities and five unknown individuals and corporations. ("*Cobb 2*") Rogers seeks damages for alleged torts related to the video recording and accuses the attorneys of having committed criminal actions related to Brindle having recorded herself and Rogers, and related to the attorneys' actions during the litigation in *Cobb 1*. *Cobb 2* was assigned to the same trial judge as *Cobb 1*.

4

In July 2014, we affirmed the trial court's discovery order in *Cobb 1* in an unpublished opinion, finding no abuse of discretion. *Brindle v. Rogers*, Case No. A14A0676, pp. 6-10 (issued July 16, 2014).[1] Brindle then filed a petition for a writ of certiorari to the Georgia Supreme Court in *Cobb 1*. The Supreme Court of Georgia denied Brindle's petition for certiorari in February 2015, and *Cobb 1* was returned to the trial court on March 13, 2015.

On March 31, 2015, the trial court lifted the stay it had imposed in *Cobb 1* while the case was on appeal. On April 9, 2015, the defendants in both *Cobb 1* and *Cobb 2* (Brindle, Cohen, Butters, and Dupree) filed a joint motion to stay both proceedings. They argued that Georgia's Anti-Strategic Lawsuit against Public Participation (anti-SLAPP) statute, OCGA § 9-11-11.1 (d), imposed an automatic stay on *Cobb 2* until the court ruled on anti-SLAPP motions to dismiss. They further argued that the proceedings in *Cobb 1* should be stayed until the trial court ruled on the motions to dismiss in *Cobb 2* so the attorneys would not be required to act simultaneously as Brindle's representative and as defendants.

---

[1]In the same opinion, we vacated an attorney fee award to Rogers in a separate case from Fulton County involving the same parties, and remanded that case to the Fulton County trial court for further proceedings. *Cohen v. Rogers*, Case Number A14A0201, and *Brindle v. Rogers*, A14A0202, pp. 1-5 (issued July 16, 2014). The Fulton County case is not at issue in the present appeal.

On April 10, 2015, Brindle filed an "interim response to pending motions," noting that her motions to stay in *Cobb 1* and *Cobb 2* were under consideration by the court, but apparently could not be ruled on immediately. Brindle further stated that she was not ignoring the motions pending before the court, including the motion to disqualify, but that "the current procedural posture of the two cases has the Court requiring counsel to defend" Brindle while also defending themselves. Rogers replied, arguing that the only pending motion in *Cobb 1* to which Brindle had not responded was his June 2013 motion to disqualify Brindle's lawyers.

The trial court scheduled a status conference on May 19, 2015, and on May 18, 2015, Rogers filed a 181-page bench brief in *Cobb 1* discussing his pending discovery motions and other issues. The trial court began the status conference hearing by noting that the parties had two cases ongoing at the same time, both of which had a number of pending motions, and offered to hear from the parties on any matters and to discuss issues related to limited discovery in *Cobb 2*.

Butters stated that he and Dupree were present in their dual capacities as defendants in *Cobb 2* and as counsel for Brindle in *Cobb 1* (Cohen was not at the hearing), and reiterated that the defendants had filed a joint motion to stay both cases. Butters asked the court to stay the proceedings in *Cobb 1* until the defendant

6

attorneys' motion to dismiss under the anti-SLAPP statute had been resolved in *Cobb 2*. However, Rogers objected to staying *Cobb 1*, arguing that Brindle was in contempt for not responding to Rogers' discovery within ten days as the trial court had previously directed in its June 2013 order granting Rogers' motion to compel, a ruling affirmed on appeal. Rogers further argued that the attorneys' conflict in representing Brindle in *Cobb 1* was independent of their conflict as defendants in *Cobb 2*, and also argued the merits of his disqualification motion.

Butters as counsel for Brindle in *Cobb 1* replied that Rogers' motion to disqualify had not been calendared to be heard during the status conference and he was not prepared to argue it, but that Brindle stood ready to comply with the trial court's two-year-old discovery order now that the court had lifted the stay. Butters pointed out that while the proceedings in *Cobb 1* had been stayed, Rogers filed *Cobb 2* against Brindle's lawyers, and while the stay in *Cobb 1* had been lifted, the proceedings in *Cobb 2* were currently stayed until the trial court resolved the lawyers' motions to dismiss under the anti-SLAPP statute. Brindle asked the court to also stay the discovery in *Cobb 1* until the motion in *Cobb 2* was decided.

Rogers responded that the trial court had lifted its stay in *Cobb 1* on March 31, 2015. Therefore, he argued, as of the May 19, 2015, hearing, Brindle stood in

7

contempt for failing to comply with the trial court's now-active order from two years ago, which directed her to supplement her discovery responses within ten days.

Regarding Rogers' contempt claim, the trial court observed during the hearing:

In fairness, we are sort of in unchartered [sic] waters[.] When I wrote that order I certainly didn't know I was going to have a subsequently filed lawsuit where the lawyers were going to be on the other side of the v. there. So Ms. Brindle is in a situation because of the conflicts that you mentioned earlier. And so I don't know. I'm going to have to do something on the conflict. I'm not going to hold Ms. Brindle in contempt for not responding within ten days because this is a little different.

The trial court told the hearing participants that it would give Brindle a new deadline, after it decided what to do regarding the disqualification motion, but agreed with Rogers that Cohen and Butters as counsel in *Cobb 1* were "separate and distinct from the anti-SLAPP. And they don't live and die with my ruling on the anti-SLAPP suit. ...[T]hey could be witnesses. They could be co-defendants. There are just lots of different issues there."

The parties then discussed other issues before the court. The trial court concluded the hearing by stating that the matters would be under advisement, and

scheduled a time for the parties to hold depositions in the court's jury room for *Cobb 2*.

The next pleading in the appellate record subsequent to the hearing on May 19, 2015, is the trial court's June 5, 2015, order granting Rogers' motion to disqualify Cohen and Butters from serving as Brindle's counsel in *Cobb 1*. The trial court found that Cohen and Butters were necessary witnesses in *Cobb 1* and necessary witnesses and defendants in *Cobb 2*; that their testimony was relevant to questions about the video recording device and to who besides Brindle had planned the recording; and that their testimony could contradict Brindle's testimony during the crime-fraud hearing. The trial court also found that Cohen and Butters had a conflict of interest in representing Brindle, because the court could foresee a situation where Brindle, Cohen, and Butters were pointing fingers at each other about the planning of the video. The court found a "substantial probability" that competing interests might hinder the attorneys' independent professional judgment, rendering the conflict unwaivable. Finally, the trial court found that, due to the circumstances, the conflict was not waivable under Rule 1.7 (c).

The trial court subsequently granted Brindle's application for a certificate of immediate review, staying all actions in *Cobb 1* pursuant to the disqualification order.

This court granted Brindle's application for an interlocutory appeal on July 21, 2015, Brindle filed a notice of appeal, and the case was docketed in this court on October 5, 2015.[2]

Cohen and Butters argue on appeal that the trial court abused its discretion in granting Rogers' motion to disqualify them as counsel in *Cobb 1*, enumerating five errors. Rogers responds that under the law of the case rule, the factual issue of whether the video recording was a criminal violation has been decided already in this Court's unpublished opinion affirming the trial court's discovery order finding that the attorney-client privilege was waived. He further argues that Cohen and Butters waived any arguments that were not raised and ruled on in the trial court, and that they conceded the merits of the motion to disqualify by failing to file a responsive brief.

1. First, the trial court's interim discovery order in *Cobb 1* did not adjudicate dispositively the question of whether Brindle violated a criminal statute by making the video recording of herself and Rogers. The trial court made an interim discovery

[2]In February 2016, Rogers filed a notice of appeal from the trial court's order in *Cobb 2* granting Dupree's motion to dismiss with prejudice Rogers' complaint against him, and Cohen, Butters, and Dupree filed notices of cross appeal. Those related appeals were docketed in this court on May 16, 2016, but briefing was not due to be completed before this appeal had to be decided under this Court's two-term rule.

10

ruling granting Rogers' motion to compel discovery responses and finding that Brindle could not claim the attorney-client privilege with regard to the limited, specific areas outlined previously. In that June 2013 order, the trial court specifically held that "[]the crime-fraud exception does not require proof of the existence of a crime or fraud to overcome the claim that communication is privileged," but only that a prima facie case be made that the exception applied. The court further explicitly stated that it was not determining "whether or not [Brindle] has committed a crime beyond a reasonable doubt or whether the State could disprove any defenses she may assert" in the future, made "no findings as to Cohen's and Butter's involvement" in making the recording, and decided only that "discovery may be had on that issue."

"The crime-fraud exception does not require proof of the existence of a crime or fraud to overcome the claim that a communication is privileged. Rather, its applicability depends upon whether a prima facie case has been made that the communication was made in furtherance of an illegal or fraudulent activity." *Rose v. Commercial Factors of Atlanta*, 262 Ga. App. 528, 529 (586 SE2d 41) (2003). See *St. Simons Waterfront v. Hunter, Maclean, Exley & Dunn,* 293 Ga. 419, 427 (1) (746 SE2d 98) (2013). ("[T]o the extent there is an *allegation* that in-house counsel has been employed by firm attorneys in an effort to defraud rather than merely defend

11

against a client, the [attorney-client] privilege may be waived.") (emphasis supplied). "Prima facie evidence is that which, on its face, is good and sufficient to establish a given fact, though it can ultimately be rebutted or contradicted." *Rose*, 262 Ga. App. at 529-530.

"A *prima facie* presumption casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates." (Emphasis in original.) *Western & Atlantic Railroad v. Henderson*, 279 U.S. 639, 640 (49 SCt 445; 73 LEd 884) (1929). "The law defines the nature and amount of the evidence which it deems sufficient to establish a prima facie case, and to throw the burden of proof on the other party; and if no opposing evidence is offered, the jury are bound to find in favor of the presumption." (Citation and punctuation omitted.) *Alabama Great Southern R. Co. v. Hamby*, 56 Ga. App. 215, 219 (192 SE 467) (1937) (Stephens, P.J., concurring specially). "In case of a legal presumption, the law does the reasoning and draws the inference. ... [S]uch a presumption is only prima facie true and may be rebutted[.]" *Goode v. Tuggle*, 52 Ga. App. 510, 513 (183 SE 850) (1936).

Here, the trial court's factual finding made in support of the June 2013 discovery order, which was affirmed by this court, was not a final, binding,

evidentiary determination of a dispositive issue. "[L]ike any other legal presumption, it may be rebutted by the facts of the case." *Rawson v. Davis*, 36 Ga. 511, 515 (1867).

Only prima facie evidence was required for the trial court to permit limited discovery because of an exception to the attorney-client privilege. It was that discovery ruling that this court affirmed in the unpublished opinion issued in Court of Appeals Case Number A14A0676. That affirmance rendered the trial court's findings about the video-recording Brindle took of the sexual encounter between herself and her employer Rogers the law of the case as to whether the attorney-client privilege could be pierced during discovery, and nothing more.[3] The trial court's factual finding made in support of this interim discovery order does not and cannot translate into a final, binding, evidentiary determination of a dispositive issue.

Furthermore, while the "law of the case rule" used to apply to any rulings in a case, it has been formally abolished as to trial court rulings, although appellate rulings remain binding in all subsequent proceedings, OCGA § 9-11-60 (h); *Continental*

---

[3]Nor are a Fulton County trial court's findings in a related case involving a claim for attorney fees under OCGA § 9-15-14 dispositive of any issues in this case. This court vacated the Fulton County trial court's initial order in Case Numbers A14A0201 and A14A0202 in the same unpublished opinion in which we affirmed the discovery order in this case, and remanded it for further proceedings. The appeal of the Fulton County trial court's revised fee order was docketed in this court on June 6, 2016, Case Number A16A1858.

*Corp. v. Dept. of Transp.*, 185 Ga. App. 792, 793 (1) (366 SE2d 160) (1988), unless the evidentiary posture of the case changes. *May v. Macioce*, 200 Ga. App. 542, 544 (2) (409 SE2d 45) (1991).

> [T]he phrase, "law of the case," as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided. Thus, if subsequent to an appellate decision, the evidentiary posture of the case changes in the trial court, the law of the case rule does not limit or negate the effect that such change would otherwise mandate.

(Citation and punctuation omitted.) *Modern Roofing & Metal Works v. Owen*, 174 Ga. App. 875, 875-876 (1) (332 SE2d 14) (1985). "An interlocutory judgment of a trial judge ..., affirmed by this court, is not res judicata unless it was based solely upon a question of law. If based upon law and evidence, it is not binding at the final trial unless the proof is then substantially the same as at the interlocutory hearing." *Collins v. Carr*, 116 Ga. 39 (1)(42 SE 373) (1902) (syllabus by the Court).

> The "evidentiary posture" exception remains well-recognized in the one post-CPA civil context where the law of the case doctrine still strictly applies, notwithstanding the unqualified language of OCGA § 9-11-60 (h) that "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the

14

lower court." See, e.g., *IH Riverdale, LLC v. McChesney Capital Partners, LLC*, 292 Ga. App. 841, 843 (666 SE2d 8) (2008) ("An exception exists where the evidentiary posture of the case changes in the trial court after the appellate court decision.")

*Moon v. State*, 287 Ga. 304, 309 (696 SE2d 55) (2010) (Nahmias, J., concurring specially) (contrasting civil rule with rule in criminal cases, where a trial court's inherent power to revoke interlocutory rulings ceases when the term ends). While Rogers argues that no additional evidence was taken after this court's previous opinion affirming the trial court's discovery ruling and the trial court's later disqualification ruling, the evidentiary posture changes "when a new issue not previously addressed by an appellate court is properly raised." *Lowman v. Advanced Drainage Sys.*, 228 Ga. App. 182, 183-184 (491 SE2d 427) (1997).

Disqualification is an issue different from discovery, with different standards. In contrast to the prima facie finding necessary to compel discovery in the face of an attorney-client privilege, there must be proof of an *actual* impropriety to disqualify an attorney from representing a client. See *Blumenfeld v. Borenstein*, 247 Ga. 406, 408 (276 SE2d 607) (1981) (reversing disqualification based solely on marital status, holding, "The mere fact that the public may perceive some conduct as improper is,

15

without some actual impropriety, insufficient justification for interference with a client's right to counsel of choice.").

2. As to the disqualification order on appeal in this case, Butters and Cohen argue that the trial court erred in disqualifying them because Rogers lacked standing to seek their disqualification; because they were not necessary witnesses; because no current actual conflict exists; because Brindle has waived any potential conflict; and because the automatic stay provisions of the anti-SLAPP statute applicable in *Cobb 2* should have also applied to stay the proceedings in *Cobb 1*. While Brindle argues the trial court gave her no opportunity to respond to the disqualification motion after it lifted the stay on March 31, 2015 and before the court issued the disqualification order on June 9, 2015, we disagree. Instead of replying to the motion, Brindle chose instead to rely on her April 9, 2015, motion to stay. One of the arguments Brindle made in her motion to stay was that her lawyers were stymied by prohibitions against their acting as both counsel in this case and as defendants in *Cobb 2*. The trial court resolved this conflict between the lawyers' status as counsel and their status as defendants by granting the motion to disqualify them as counsel in this case, and we cannot fault the court for choosing the order of determination.

16

Rogers also argues that by failing to file a direct response to the motion to disqualify, Cohen and Butters conceded the merits of his motion. We disagree that the absence of a response constitutes such a complete concession to the merits of Rogers' motion for disqualification. That Brindle disputed the motion to disqualify is apparent from reviewing the record, including Brindle's motion to stay the proceedings, her interim response to the pending motion to disqualify seeking the court's guidance on how to proceed, and the transcript of the May 2015 status conference. Were it otherwise, we would simply decide that the issue had been decided by default.

Just as "[t]here is "no such thing as a default summary judgment," *Smith v. Atlantic Mut. Cos.*, 283 Ga. App. 349, 351 (1) (641 SE2d 586) (2007) (citation and punctuation omitted), there is no such thing as a default attorney disqualification. Motions for summary judgment are not automatically granted if the other side fails to respond, because such a motion "should not be granted unless it affirmatively appears from the pleadings and evidence that the party so moving is entitled to prevail." (Punctuation and footnote omitted.) *Houghton v. Sacor Financial*, ___ Ga. App. ___, *11 (1) (b) (ii) (Case Number A16A0009, decided May 31, 2016). See also *Hall v. Massally*, 329 Ga. App. 136, 138 (1) (764 SE2d 161) (2014) ("The failure of a nonmoving party to file responsive material … does not automatically entitle the

17

moving party to judgment for there is no such thing as a default summary judgment. To affirm a grant of summary judgment, it must affirmatively appear from the record that no question of material fact exists and the moving party is entitled to judgment as a matter of law.") (citations and punctuation omitted). We see no reason for applying a different rule in the context of a motion to disqualify filed by an opposing party.

We will therefore apply the proper standard of review in this case and consider whether the trial court abused its discretion in granting Rogers' motion to disqualify Cohen and Butters from representing Brindle in light of the evidence of record, rather than hold that the issue was correctly decided by default.

3. The proper standard for appellate review of a trial court's grant of a motion to disqualify a party's attorney is abuse of discretion. *Cardinal Robotics v. Moody*, 287 Ga. 18, 22 (694 SE2d 346) (2010). We approach these motions "with caution due to the consequences that could result if the motion is granted, such as the inevitable delay of the proceedings and the unique hardship on the client including the loss of time, money, choice of counsel, and specialized knowledge of the disqualified attorney." *Hodge v. UFRA-Sexton, LP*, 295 Ga. 136, 138 (1) (758 SE2d 314) (2014).

18

"In other words, lawyers are not fungible[.]" *Lewis v. State*, 312 Ga. App. 275, 280 (1), n. 8 (718 SE2d 112) (2011).

Because opposing counsel may employ a motion to disqualify to delay the proceedings or disrupt a case, "we view disqualification as an extraordinary remedy that should be granted sparingly." *Hodge*, 295 Ga. at 139 (1). See *Reece v. United Home Care of N. Atlanta,* Case 1:12-CV-2070-RWS, 2014 US Dist. LEXIS 61196 at *5 (ND Ga. May 2, 2014) ("Motions to dismiss brought by opposing counsel are automatically viewed with circumspection."). Further, there must be an actual impropriety, not simply the appearance of impropriety, to warrant disqualification. *Blumenfeld,* 247 Ga. at 408.

Opposing counsel may raise the disqualification issue if "the conflict is such as clearly to call into question the fair or efficient administration of justice," although such an objection "should be viewed with caution for it can be misused as a technique of harassment." (Citation and punctuation omitted) *Bernocchi v. Forcucci*, 279 Ga. 460, 463 (2) (614 SE2d 775) (2005). Comment 15 to Georgia Rule of Professional Conduct ("Rule") 1.7. cautions that an opposing counsel's motion to disqualify "should be viewed with caution, ... for it can be misused as a technique of harassment." To have standing to move for an opposing lawyer's disqualification, a

19

lawyer must substantiate "a violation of the rules which is sufficiently severe to call in question the fair and efficient administration of justice." *Bernocchi*, 279 at at 463 (2) (vacating disqualification order because trial court applied the wrong standard to determine if counsel had a conflict of interest in simultaneously representing individual and two corporations).[4]

Rogers argued that this court's affirmance of the trial court's interim discovery order translates into a final determination that Brindle's act of making the recording constituted a felony in violation of OCGA § 16-11-62 (2) and requires the disqualification of Cohen and Butters under Rule 8.4. (a) (12) ("It shall be a violation of the Georgia Rules of Professional Conduct for a lawyer to ... be convicted of a felony.") As previously explained in Division 1, however, the trial court's factual finding that an exception applied to the attorney-client privilege was not an ultimate determination of the legality of the video or whether a crime was committed.

---

[4]While an evidentiary hearing is not always required before counsel can be disqualified, in some cases one may be necessary "to allow the parties to submit evidence in support of their positions before the trial court determines whether disqualification is appropriate." *Befekadu v. Addis Intl. Money Transfer, LLC*, 332 Ga. App. 103, 108 (1) (772 SE2d 785) (2015). Neither party sought a hearing on this issue.

Additionally, that discovery finding and this court's affirmance of it do not determine the outcome of Roger's motion to disqualify Brindle's attorneys from this case. The argument that the discovery ruling controls the motion to disqualify mistakenly conflates the issues of privilege waiver and disqualification, much as the trial court and this court did in *Hunter, Maclean, Exley & Dunn P.C. v. St. Simons Waterfront,* 317 Ga. App. 1 (730 SE2d 608) (2012), which was vacated by our Supreme Court in *St. Simons Waterfront LLC,* 293 Ga. 419.

The trial court in *St. Simons* held that, while a law firm's communications with outside counsel were protected from discovery by the attorney-client privilege, that privilege did not apply to the firm's communications with its in-house counsel due to a conflict of interest that had developed between the firm and the client that subsequently sued for legal malpractice. 293 Ga. at 420-421. This court vacated and remanded for further consideration after analyzing the privilege issue by examining the nature of the communications, the structure of the firm's in-house counsel position, and the extent to which the client gave informed consent, consonant with the Rules of Professional Conduct, to the firm's defensive measures. Id. at 421.

In vacating our opinion, the Supreme Court "restructure[d] this framework to fit within the parameters of Georgia's general law on privilege and work product and

21

to remove the Rules of Professional Conduct from the analysis," which are separate issues. *St. Simons Waterfront LLC,* 293 Ga. at 421. In explaining that the attorney-client privilege issue is separate from any professional conduct issues, the Supreme Court noted that:

> In promulgating our Rules of Professional Conduct, the State Bar has stated bluntly that the Rules "are not intended to govern or affect judicial application of either the attorney-client or work product privilege." Ga. Rules of Professional Conduct, Preamble, ¶ 19. As further noted in the Preamble, ["][]the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.["] Id. at ¶ 18.

(Emphasis omitted.) Id. at 425. The Supreme Court concluded that any conflict of interest between the firm and the client arising out of a Rules violation did not necessarily abrogate the "the protections afforded to privileged communications and attorney work product." Id. at 420. Instead, the privileges and exceptions to privilege

that apply to "every other variation of the attorney-client relationship" apply also to the relationship between a law firm's in-house attorney and the law firm. Id. at 419.

Accordingly, whether an exception to the attorney-client privilege applies does not determine as a matter of law whether a lawyer has a conflict of interest requiring disqualification.

4. The trial court found that Cohen and Butters were disqualified from representing Brindle for two reasons, first because they were "necessary witnesses," and second because they had a conflict of interest in representing Brindle in *Cobb 1* while also defending against Rogers' complaint against them in *Cobb 2*. In its order, the court observed that Cohen told the court during a hearing in April 2013 that he sent Brindle to see an expert, as the parties addressed whether the identity of the person or persons from whom Brindle obtained the video recording equipment was discoverable. That testimony could contradict Brindle's testimony, the trial court said, because "Ms. Brindle had testified at the crime-fraud hearing "that Mr. Cohen and Mr. Butters both attended the meeting with the expert." The court further held that the lawyers had a conflict of interest, because it could

> foresee a situation, regarding the planning and making of the video, where Ms. Brindle, Mr. Cohen and Mr. Butters are pointing fingers at

23

each other as to who advised who to make the video recording. Additionally, it may [be] in Ms. Brindle's best interest to end this litigation entirely while her counsel may believe it is best to continue on for their own personal reasons.

The trial court added the following footnote: "This Court's court reporter has received a phone call from the Fulton County District Attorney's Office, requesting the transcript of the [c]rime-[f]raud hearing."

a. *Necessary witnesses*. Rule 3.7 (a) provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" with some exceptions. The party moving for disqualification of a lawyer under Rule 3.7 has the burden of showing that the lawyer "is likely to be a necessary witness" by demonstrating that the lawyer's testimony is relevant to disputed, material questions of fact and that there is no other evidence available to prove those facts. *Clough v. Richelo*, 274 Ga. App. 129, 132 (1) (616 SE2d 888) (2005).

Considering the circumstances in which a party's lawyers are expected to be necessary witnesses, our Supreme Court has said:

[T]here is "conflict inherent in counsel's dual role as advocate and witness," and for an attorney to act as both witness and advocate is a circumstance to be avoided. Rather, "[t]he practice of trial attorneys testifying is not approved by the courts except where made necessary by

24

the circumstances of the case." *McLaughlin v. Payne*, 295 Ga. 609, 611 (761 SE2d 289) (2014) (citations omitted). See also *Mobley v. State*, 265 Ga. 292, 299 (18) (b) (455 SE2d 61) (1995) (holding that, when counsel also serve as witnesses, they "are forced into ethical conflicts, their credibility is improperly placed in issue, and advocacy roles are impaired"); *Castell v. Kemp*, 254 Ga. 556, 557 (331 SE2d 528) (1985) (noting that a lawyer who serves as both witness and advocate " 'becomes more easily impeachable for interest and thus may be a less effective witness' " and " 'is in the unseemly and ineffective position of arguing his [or her] own credibility' " (citation omitted)); 81 AmJur2d § 220 (2015).

*Martin v. State*, 298 Ga. 259, 270-271 (2) (b) (779 SE2d 342) (2015).

The trial court found that the lawyers were necessary witnesses because "their testimony is relevant to where and from whom the recording device used to record Mr. Rogers' and Ms. Brindle's sexual encounter was obtained, under what circumstances the video recording device was obtained and who else was involved in the planning of the recording." Brindle argues that other parties could establish these facts, and that therefore her lawyers were not "necessary," and further, the prohibition against serving dual roles only applies to the actual trial rather than pre-trial proceedings. Pretermitting whether the trial court abused its discretion in finding the lawyers were necessary witnesses, however, the trial court did not abuse its

25

discretion in disqualifying Cohen and Butters as Brindle's attorneys due to a conflict of interest.

b. *Conflict of interest.* Rule 1.7 (a) provides: " A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests ... will materially and adversely affect the representation of the client." Here, the trial court found that "it is difficult for this Court to see how Mr. Cohen and Mr. Butters do not have competing interests with their client, Ms. Brindle," and found a "substantial probability that these competing interests would most likely hinder their independent professional judgment on pursuing courses of action in Ms. Brindle's case. Comment 2 to Rule 1.7, which the trial court cited, explains:

> Loyalty to a client is impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (a) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.

26

Many of the comments to Rule 1.7 address conflicts arising from a lawyer's representation of clients, former clients, opposing parties, or co-defendants. This case involves none of those considerations, but rather a claim that the attorneys helped their client perform an improper act. Comment 11 to Rule 1.7 is instructive in that regard:

> Conflicts of interest in contexts other than litigation sometimes may be difficult to assess. Relevant factors in determining whether there is potential for material and adverse effect include the duration and extent of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise and the likely prejudice to the client from the conflict if it does arise.

Rule 1.7, Cmt. 11. "The rules of disqualification of an attorney will not be mechanically applied; rather, we should look to the facts peculiar to each case in balancing the need to ensure ethical conduct on the part of lawyers appearing before the court and other social interests, which include the litigant's right to freely chosen counsel." *Stoddard v. Bd. of Tax Assessors*, 173 Ga. App. 467, 468 (1) (326 SE2d 827) (1985).[5]

---

[5]Under some circumstances, a client may waive a conflict in writing, Rule 1.7 (b), but we do not address that issue because Brindle's written waiver was filed after

27

Considering the circumstances surrounding this litigation, we find that the trial court did not abuse its discretion in disqualifying Butters and Cohen from representing Brindle.

*Judgment affirmed. Boggs and Mercier, JJ., concur.*

---

the trial court ruled in June 2015.