**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 14, 2025**

# In the Court of Appeals of Georgia

A25A1631. TARA ANNA, LLC. et al v. FREIHOFER TRANSPORT, INC.

HODGES, Judge.

Defendants Tara Anna, LLC and Donald Walloch ("appellants") appeal the trial court's order granting plaintiff Freihofer Transport, Inc.'s ("Freihofer") motion to disqualify Bryan J. Henderson as counsel for the appellants. For the reasons that follow, we reverse.

"In ruling on a motion to disqualify counsel, the trial court sits as the trier of fact, resolving conflicts in the evidence and assessing witness credibility." *Samnick v. Goodman*, 354 Ga. App. 805, 806 (841 SE2d 468) (2020). "The ultimate determination of whether an attorney should be disqualified from representing a client in a judicial proceeding rests in the sound discretion of the trial judge. This Court will

not interfere with a trial court's ruling absent abuse of that discretion." (Citation and punctuation omitted.) *Befekadu v. Addis Intl. Money Transfer,* 339 Ga. App. 806, 807 (1) (795 SE2d 76) (2016).[1] "However, the rules of disqualification of an attorney will not be mechanically applied; rather, this Court should look to the facts peculiar to each case in balancing the need to ensure ethical conduct on the part of lawyers appearing before the court and other social interests, which include the litigant's right to freely chosen counsel." (Citation and punctuation omitted.) *Duvall v. Bledsoe*, 274 Ga. App. 256, 258 (617 SE2d 601) (2005).

So viewed, the record in this case shows that Freihofer is a moving company that also provides storage facilities for its clients. In 2018, Freihofer entered into a ten-year lease with an entity called Rodriguez Family to lease 12,900 square feet of a warehouse owned by Rodriguez Family. Freihofer's leased space is known as "Suite

---

[1] Tara Anna and Walloch have filed a motion to strike Freihofer's brief because it was submitted ten days after the filing deadline. However, "[j]ust as there is no such thing as a default summary judgment, there is no such thing as a default attorney disqualification." (Citation and punctuation omitted.) *Cohen v. Rogers*, 338 Ga. App. 156, 165 (2) (789 SE2d 352) (2016). Even if we struck Freihofer's late brief, we would still "apply the proper standard of review in this case and consider whether the trial court abused its discretion in granting [Freihofer's] motion to disqualify [Henderson] from representing [the appellants] in light of the evidence of record, rather than hold that the issue was correctly decided by default." Id. The motion to strike is hereby denied.

A." Tara Anna, LLC operates the "District" nightclub out of a separate suite adjacent to Suite A.

In October 2022, Freihofer filed a complaint for damages against Rodriguez Family and Tara Anna,[2] alleging that water began intruding into Suite A from both the roof of the building and the District, damaging items in Freihofer's space. Freihofer sought: (i) damages for nuisance and negligence from both defendants; (ii) damages for breach of the lease from Rodriguez Family; (iii) a declaratory judgment against Rodriguez Family seeking a setoff for the rent it paid while a part of Suite A was rendered untenable due to the water intrusion; and (iv) OCGA § 13-6-11 attorney fees and expenses of litigation from both defendants.

Years prior to the litigation, Freihofer had received approval from Ruben Rodriguez, the president of Rodriguez Family, and Rodriguez Family to construct a loading dock at Freihofer's expense that covered and rendered unusable several handicap parking spaces on the property. During the course of the litigation,

---

[2] Armour District Investment Group, LLC was originally named in the complaint, but Tara Anna, LLC was subsequently substituted as a party defendant, by consent of all parties, after a deposition revealed that Tara Anna actually owned and operated the adjacent nightclub. Tara Anna is an affiliate of Armour District Investment Group.

Freihofer's owner purportedly made a threat to Tara Anna that he would notify the city that there were insufficient handicap parking spaces at the property in violation of city code.[3] These were parking spaces that Freihofer had covered years earlier when installing the loading dock. In turn, the appellants sent a demand letter to Rodriguez Family requesting access to the parking spaces.

At some point, Ruben was introduced to Henderson through a mutual friend and the three went out to lunch after a networking meeting. Ruben testified by deposition that "it just so happened" that Henderson represented Ruben's tenant, Tara Anna, and Henderson mentioned that his client was thinking about removing the loading dock. That was the first time Ruben heard the idea of the dock removal. They were sitting at lunch, talking about the lawsuit, and Henderson suggested that removing the loading dock might be an option. Ruben deposed that the comment "was very passe and casual." After the comment, Ruben "didn't really even think about it. [They] just kind of continued BS'ing, doing what guys do. . . . [W]e didn't talk shop at all." Rodriguez Family's attorney was not present during this lunch.

---

[3] The appellants assert that the intent behind Freihofer's threat was to sabotage the District's liquor license.

Subsequent conversations regarding the potential removal of the loading dock were done through e-mail with Rodriguez Family's attorney included.

It appears to be undisputed that on August 2, 2023, Henderson sent an email to Ruben stating, "Per our earlier discussion we are ready to remove the dock this weekend. Please confirm we have your approval."[4] Ruben confirmed approval,[5] and Henderson subsequently called Freihofer's counsel and sent an e-mail on August 4, 2023 demanding that Freihofer dismiss the water intrusion lawsuit, pay attorney fees, and build six new parking spaces or the appellants would proceed to remove the loading dock ("settlement offer"). On August 5, 2023, Donald Walloch, the corporate representative of the District and 100 percent owner of Tara Anna, and one of his workers purportedly came to the loading dock with a bulldozer to destroy the loading

---

[4] We note that although the appellants attached a copy of this email as an exhibit to their application for interlocutory appeal, we do not see the email in the appellate record. Generally, "exhibits that are not in the record transmitted by the trial court cannot be considered by this Court." *Holland v. State*, 357 Ga. App. 87, 90 (2) (c) (850 SE2d 170) (2020). Nonetheless, it appears in this case that the facts contained in the email are undisputed.

[5] As with the initial email sent on August 2, 2023 and discussed in footnote 4, this approval email likewise does not appear in the record on appeal (though it was attached as an exhibit to the appellants' application for interlocutory appeal), but the facts contained in the email also do not appear to be disputed.

dock. Freihofer called the police, who stopped Walloch from destroying the loading dock, but later that night someone partially destroyed the dock. Freihofer averred that more of the dock was destroyed the following morning by one of Walloch's workers. On August 7, 2023, Freihofer filed an emergency motion for a temporary restraining order to prevent Walloch from continued destruction of the dock. The trial court granted the emergency motion.

On August 10, 2023, Freihofer deposed Walloch. In his deposition, Walloch refused to answer questions pertaining to the destruction of the loading dock. Freihofer moved to compel continuation of Walloch's deposition, and the District, through Henderson, opposed the motion, arguing that Freihofer's "attempt to depose Mr. Walloch regarding issues surrounding the demolition of the loading dock is nothing more than a thinly veiled effort to conduct discovery related to claims that have not even been asserted[.]" Freihofer's position was that "the destruction of the loading dock was done in connection with a settlement offer made in this case, and that an injunction was issued in this case," so the issues surrounding the loading dock are relevant to the case. Henderson, on the other hand, responded that "the 'settlement offer' . . . is inadmissible in the actual trial of the case under OCGA § 24-

4-408 [and w]ithout that offer, the remaining conduct related to the loading dock is wholly irrelevant." Henderson stated that if Freihofer wanted to depose Walloch about the loading dock, it "should file a separate action asserting claims based on the loading dock demolition and notice a deposition based on the allegations in the new lawsuit."

On September 29, 2023, Freihofer filed a separate complaint against Rodriguez Family, Ruben, Tara Anna, Walloch, and five John Doe employees of Tara Anna and/or Walloch. The complaint alleged that: (i) Walloch, through Tara Anna, operated the District nightclub in the adjacent suite; (ii) Ruben and Rodriguez Family gave Freihofer permission to construct a loading dock at its suite, which it used without incident for two years; (iii) Henderson (Tara Anna and Walloch's counsel) threatened to destroy the dock unless Freihofer dismissed its original lawsuit filed against Rodriguez Family and Tara Anna; (iv) Rodriguez Family and Ruben gave Walloch and Tara Anna their blessing to destroy the dock; and (v) the appellants did, in fact, destroy part of the dock. The complaint sought damages for trespass against all defendants, breach of lease against Rodriguez Family, punitive damages as to all

7

defendants, and attorney fees and expenses of litigation under OCGA § 13-6-11 as to all defendants. The trial court consolidated the cases in January 2024.

Subsequently, Freihofer learned of the lunch meeting between Ruben and Henderson wherein the dock removal was brought up. Freihofer then moved to disqualify Henderson as an attorney for Tara Anna and Walloch on the basis that Henderson was likely to be called as a material witness in the case. Tara Anna and Walloch opposed the motion on the ground that Henderson was not a material witness, other individuals could testify to the evidence Freihofer sought to obtain from Henderson, and the motion was not filed with reasonable promptness. The trial court granted the motion to disqualify Henderson from representing Tara Anna and Walloch. The court further imputed the disqualification to the law firms with whom Henderson worked while representing the appellants: Pool Huffman, LLC and Guilmette Pulver, LLC. This Court granted the appellants' request for interlocutory appeal from the trial court's order denying their amended motion for reconsideration, and this appeal followed.

Although this is a contentious, multi-faceted dispute, the issues are not complex, and the instant appeal turns on two questions: (i) Did the trial court abuse

its discretion in disqualifying Bryan Henderson as an attorney for Tara Anna and Walloch? and (2) Did the trial court abuse its discretion in imputing the disqualification to the law firms for which Henderson worked during his representation of the appellants? We answer both questions in the affirmative.

1. It is well settled that "the right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution." *Blumenfeld v. Borenstein*, 247 Ga. 406, 408 (276 SE2d 607) (1981). "In determining whether to disqualify counsel, the trial court should consider the particular facts of the case, balancing the need to ensure ethical conduct on the part of lawyers against the litigant's right to freely chosen counsel." (Citation and punctuation omitted.) *Clough v. Richelo*, 274 Ga. App. 129, 132 (1) (616 SE2d 888) (2005). In light thereof,

> [w]e approach [motions to disqualify counsel] with caution due to the consequences that could result if the motion is granted, such as the inevitable delay of the proceedings and the unique hardship on the client including the loss of time, money, choice of counsel, and specialized knowledge of the disqualified attorney. In other words, lawyers are not fungible.

9

(Citations and punctuation omitted.) *Cohen v. Rogers*, 338 Ga. App. 156, 165 (3) (789 SE2d 352) (2016). Disqualification is an extraordinary remedy that should be granted sparingly. *Hodge v. URFA-Sexton, LP*, 295 Ga. 136, 139 (1) (758 SE2d 314) (2014). "Unless an attorney's conduct tends to taint the underlying trial, the court should be quite hesitant to disqualify him." (Citation and punctuation omitted.) *WellStar Health Systems v. Kemp*, 324 Ga. App. 629, 634 (1) (b) (751 SE2d 445) (2013). "[T]here must be an actual impropriety, not simply the appearance of impropriety, to warrant disqualification." *Cohen*, 338 Ga. App. at 166 (3).

Disqualification in the present case was sought under Georgia Rule of Professional Conduct 3.7 ("Rule 3.7"), which states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by [Georgia Rules of Professional Conduct] Rule 1.7 or Rule 1.9.

"The purpose of Rule 3.7 is to prevent an attorney from being in the awkward position of acting as both a witness and an advocate at trial," which could create a number of problems, including "the possibility that, in addressing the jury, the lawyer will appear to vouch for his own credibility [and] the unfair and difficult situation which arises when an opposing counsel has to cross-examine a lawyer-adversary and seek to impeach his credibility[.]" (Citation and punctuation omitted.) *Clough*, 274 Ga. App. at 137 (2). "The party moving for disqualification of a lawyer under Rule 3.7 has the burden of showing that the lawyer is likely to be a necessary witness by demonstrating that the lawyer's testimony is relevant to disputed, material questions of fact *and* that there is no other evidence available to prove those facts." (Punctuation and footnote omitted; emphasis supplied.) Id. at 132 (1); accord *Cohen*, 338 Ga. App. at 168 (4) (a); *Befekadu v. Addis Intl. Money Transfer*, 332 Ga. App. 103, 107-108 (1) (c) (772 SE2d 785) (2015); see also *Martinez v. Housing Auth. of DeKalb County*, 264 Ga. App. 282, 288 (5) (590 SE2d 245) (2003) (although this Court did not refer to Rule 3.7 in its decision, it found that an attorney should not be disqualified because there were other witnesses who could testify about the events at issue and, therefore, the attorney's testimony was not necessary). Freihofer did not meet this burden.

(a) *Henderson is not likely to be a necessary witness*. Our Supreme Court has observed that "there is conflict inherent in counsel's dual role as advocate and witness, and for an attorney to act as both witness and advocate is a circumstance to be avoided. Rather, the practice of trial attorneys testifying is not approved by the courts except where made necessary by the circumstances of the case." (Citations and punctuation omitted.) *McLaughlin v. Payne*, 295 Ga. 609, 611 (761 SE2d 289) (2014). This Court has held that an attorney should not be disqualified if there are other witnesses who could testify about the events at issue because then the attorney's testimony is not necessary. See *Martinez*, 264 Ga. App. at 288 (5) (affirming denial of motion to disqualify where other witnesses testified about the events and were available for cross-examination even though attorney was personally involved in many of the meetings and communications preceding the termination of a lease). Indeed, "in determining whether a lawyer's testimony is necessary, a court should consider, inter alia, what issues the testimony will address and whether other evidence is available to prove the same point, because disqualification is not required if the lawyer's testimony will be merely cumulative of other evidence." *Clough*, 274 Ga. App. at 133 (1). The mere fact that an attorney may have some knowledge about a case

does not automatically make him a necessary witness subject to disqualification. See, e.g., *Benson v. McNutt*, 289 Ga. App. 565, 566 (657 SE2d 639) (2008) (finding that "the mere fact that an attorney has general financial information about a former client does not *necessarily* warrant disqualification") (citation and punctuation omitted; emphasis in original). "[A] lawyer is a 'necessary' witness under Rule 3.7 [only] if his or her testimony is 'relevant, material and unobtainable elsewhere.'" (Citation omitted.) *Clough*, 274 Ga. App. at 133 (1).

Here, Freihofer argued in its motion to disqualify:

Mr. Henderson will be, at minimum, a necessary discovery witness and may be required to testify at trial. It is evident from the email exchange attached in Exhibit A that he was intimately involved in discussions with the Rodriguez Defendants regarding the destruction of Plaintiff's loading dock. His testimony will likely be critical both for factual purposes and potentially for impeachment purposes as well. The information gleaned from Mr. Henderson's testimony will be unobtainable through other means. To Plaintiff's knowledge there are no recordings of the conversations between Mr. Henderson and the Rodriguez Defendants regarding the loading dock. The Rodriguez defendants' testimony may be widely different from Mr. Henderson's, and given his involvement, Mr. Henderson's testimony may give rise to Plaintiff asserting additional claims against him personally. Due to his involvement, it is clear Mr.

> Henderson's continued representation of the Walloch Defendants is impermissible under Rule 3.7[.]

Among other things, Freihofer alleges in his second complaint that the appellants, Ruben, and Rodriguez Family colluded in bad faith to destroy Freihofer's loading dock as retribution for being named in Freihofer's original water intrusion action. Freihofer also asserts a bad faith and stubborn litigiousness claim against all defendants. Henderson is not a named defendant in the action.

In granting Freihofer's motion, the trial court concluded that Henderson "is likely to be a necessary witness at the trial of this case" because

> the July 2023 lunch meeting between Mr. Henderson and Mr. Rodriguez in which the destruction of Plaintiff's loading dock was first discussed creates an unavoidable situation in which Mr. Henderson will likely be called as a witness in the trial of this case. While there were two other attendees at this meeting, Mr. Rodriguez and another attorney who is not involved in this case, Mr. Henderson is the only person who could testify about his intent, motivations, and state of mind at the time he made his proposal to Mr. Rodriguez. No other witness could testify as to these things and stay within the parameters of our rules of evidence.

We conclude that the trial court abused its discretion by disqualifying Henderson on the basis that his testimony was necessary.

14

While Henderson clearly exercised poor discretion in discussing the lawsuit with Ruben after learning who he was, this lapse in judgment does not demand Henderson's disqualification from representing the appellants. Freihofer claims that Henderson is a necessary witness to prove its allegations of collusion and bad faith. However, contrary to Freihofer's argument, Henderson is not a necessary witness because "other evidence is available" to prove these allegations. *Clough*, 274 Ga. App. at 133 (1). For example, questions concerning the lunch conversation between Henderson and Ruben can be asked of not only Ruben, but also the third-party, disinterested lawyer who attended the lunch. And Freihofer's assertion that Henderson could "control the narrative of his own words and conduct through cross-examination of [Ruben] and other witnesses" fails to take into account the fact that Ruben, in all likelihood, would attempt to avoid individual liability by testifying against Henderson and the disinterested third-party attorney has no stake in lying on the stand to protect Henderson. It also fails to take into account the trial court's ability to control the cross-examination questioning in its courtroom. See OCGA § 15-1-3 (4) ("Every court has power . . . [t]o control, in the furtherance of justice, the conduct of

its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto[.]").

In addition, other witnesses are available to testify about the events surrounding the destruction of the loading dock, and documentary evidence in the form of emails sent by Henderson and other parties in the case exists to detail any alleged collusion and bad faith concerning the dock removal. In fact, Freihofer's motion to disqualify mentions these emails.

Although the trial court is correct that "Henderson is the only person who could testify about his intent, motivations, and state of mind at the time he made his proposal [suggesting removal of the loading dock] to [Ruben]," even if such testimony would be admissible, Henderson's testimony "is not *necessary* to prove any fact related to the [destruction of the dock] or the circumstances surrounding the [dock destruction]." (Emphasis in original.) *Schaff v. State*, 304 Ga. App. 638, 642 (1) (697 SE2d 305) (2010). Freihofer has not asserted any claims against Henderson personally, and none of the claims involve or require the mental impressions of any party's attorney.

Based on the record before us, we conclude that Freihofer has failed to meet its burden of demonstrating that Henderson is a "necessary" witness because other evidence is available for Freihofer to prove its allegations of collusion and bad faith against the defendants in this case. Any testimony Henderson might give is not "unobtainable elsewhere." (Citation and punctuation omitted.) *Clough*, 274 Ga. App. at 133 (1); *Martinez*, 264 Ga. App. at 288 (5); see also *Schaff*, 304 Ga. App. at 640-642 (1) (reversing a disqualification order because mother and attorney's assistant were both present for the event and could testify to the circumstances surrounding the child's statement); compare *Martin v. State*, 298 Ga. 259, 269 (2) (b) (779 SE2d 342) (2015), disapproved in part on other grounds by *Willis v. State*, 304 Ga. 686, 706 (11) (a), n. 3 (820 SE2d 640) (2018) (affirming disqualification order where lawyers were the only witnesses who claimed to have knowledge about what the judge said in chambers). The trial court therefore abused its discretion in disqualifying Henderson from representing Tara Anna and Walloch.[6]

---

[6] We further note that the trial court abused its discretion by disqualifying Henderson under Rule 3.7 from all participation in the case, rather than limiting his disqualification to the trial of the case. "Rule 3.7 does not preclude a lawyer from representing a client prior to trial, even if the lawyer is likely to be a necessary witness at the trial." *Clough*, 274 Ga. App. at 138 (2). According to *Clough*, the Rule's plain language limits its application to the trial itself: "A lawyer shall not act as advocate *at*

(b) *Henderson's testimony relates to uncontested issues.* Moreover, even if Henderson could be considered a necessary witness, we conclude that his testimony would fall under the first exception to Rule 3.7 disqualification. This exception provides that an attorney "shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where . . . the testimony relates to an uncontested issue[.]" Rule 3.7 (a) (1). In addressing this first exception to Rule 3.7, the trial court concluded that the exception did not apply because:

> The destruction of Plaintiff's loading dock, the respective rights and remedies of the parties, and the events leading up to its destruction are all presently contested issues in this case. Plaintiffs in this case are seeking damages for trespass for the destruction of the loading dock, as well as punitive damages and attorney's fees under OCGA § 13-6-11. Mr. Henderson's testimony certainly may be relevant for Plaintiff to prove any or all of these claims, which the Defendants collectively contest.

The trial court's conclusion is not supported by the record.

---

*a trial* in which the lawyer is likely to be a necessary witness . . . ." (Emphasis supplied.) Rule 3.7 (a); accord *Mitchell v. Parian*, 355 Ga. App. 498, 502 (2), n. 6 (844 SE2d 555) (2020) (citing *Clough* for the proposition that "the concerns that arise when a lawyer associated with the case is a necessary witness at trial do not impact that attorney's participation in pretrial proceedings").

The record before us shows that the removal/destruction of Freihofer's loading dock and the events leading up to the dock's destruction — including Henderson's lunch with Ruben — are not in dispute. Henderson and Ruben had lunch and discussed the idea of removing the dock, Rodriguez Family and its counsel approved the removal, the dock was partially destroyed, and Walloch, through his agents, carried out the demolition. Additionally, there is no dispute as to when the destruction occurred, that it was intentional, or that Freihofer's threat to report the appellants to the city for a lack of handicap parking spaces (which Freihofer's dock covered) initiated the destruction. Testimony and documentary evidence support these undisputed facts and the parties' involvement in the destruction of the loading dock. While the respective rights and remedies of the parties are disputed issues, those issues involve questions of law, such as whether construction of the dock was approved by Rodriguez Family and the cost of repairing the dock. These are issues to which Henderson has no personal knowledge. And, as stated previously, contrary to the trial court's conclusion, Henderson's personal intent, motivations, and state of mind at the time he suggested the dock removal to Ruben during their lunch are not relevant to any alleged collusion or bad faith on the part of the defendants in this case.

Such personal motivations do not create disputed facts surrounding the defendants and their possible collusion.

In short, although Henderson may have engaged in unbecoming or unprofessional conduct when he had lunch with Ruben, suggested the removal of the dock as an option, and threatened Freihofer that the dock would be destroyed if the initial water intrusion litigation was not dismissed, we conclude that Henderson's testimony would fall under the first exception to Rule 3.7 disqualification. Any relevant testimony given by Henderson would relate to uncontested issues in this case involving trespass, breach of contract, and collusion and bad faith of the named defendants. Accordingly, we find that the trial court abused its discretion in disqualifying Henderson from representing Tara Anna and Walloch on this additional ground.

2. The appellants further argue that the trial court improperly imputed Henderson's disqualification to his current and former law firms. Given our conclusions in Division 1 that the court abused its discretion in disqualifying Henderson, the issue of the law firm disqualifications is rendered moot. However, in an abundance of caution and to educate the trial court, we address below the

appellants' argument, agreeing that disqualification of the law firms was improper for two reasons.

First, Freihofer's motion to disqualify did not request that Henderson's law firms be disqualified. In fact, its motion to disqualify specifically stated, "Plaintiff is not moving that Mr. Henderson's firm be disqualified from this matter, only Mr. Henderson personally. Plaintiff has no doubt the representation of the Walloch Defendants by the other capable attorneys with Mr. Henderson's firm will be nothing less than exceptional."

Second, the trial court abused its discretion in removing the law firms without applying the proper analysis. Under Rule 3.7 (b), "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." Our Supreme Court has weighed in on the issue of law firm disqualification under this Rule:

> When an attorney is precluded from acting as advocate in a trial under Rule 3.7 (a) because he is a necessary witness, his status is not automatically imputed to other attorneys in his office, although the circumstances may leave the other attorneys with their own disqualifications. A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless

precluded from doing so by Rule 1.7 or Rule 1.9 [of the Georgia Rules of Professional Conduct].

(Citation and punctuation omitted.) *McLaughlin*, 295 Ga. at 611. The trial court's order in this case does not mention Rules 1.7 or 1.9. It merely imputes Henderson's disqualification to the law firms for whom Henderson worked during his representation of Tara Anna and Walloch.

Based on the foregoing, the trial court abused its discretion by disqualifying the law firms of Poole Huffman, LLC and Guilmette Pulver, LLC.

*Judgment reversed. McFadden, P. J., and Pipkin, J., concur*.